138 F.3d 46
 10 Communications Reg. (P&F) 921
 Lawrence MARCUS; Marc Kasky, on behalf of themselves and
all others similarly situated, Plaintiffs-Appellants,
v.
AT&T CORP., Defendant-Appellee.
Jeffrey A. MOSS, on behalf of himself and all others
similarly situated, Plaintiff-Appellant, Donna
Borok Moss, Plaintiff,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Defendant-Appellee.
 Docket Nos. 96-9244, 96-9256.
 United States Court of Appeals,
Second Circuit.
 Argued June 13, 1997.
Decided Feb. 24, 1998.
 
 Arthur R. Miller, Cambridge MA (Michael C. Spencer, Milberg Weiss Bershad Hynes & Lerach, New York City, Janine L. Pollack, New York City, on the brief) for Marcus Plaintiffs-Appellants.
 Steven R. Rhoads, The Mills Law Firm, Greenbrae, CA (Robert W. Mills, Greenbrae, CA, Donald M. Lefari, Sails & Lefari, New York City, on the brief) for Moss Plaintiffs-Appellants.
 Howard J. Trienens, Sidley & Austin, New York City (Steven M. Bierman, Elizabeth M. Sacksteder, New York City, on the brief, Marc E. Manly, Howard Spierer, Office of the Solicitor General, AT&T Corp., Liberty Corner, NJ, of counsel), for Defendant-Appellee.
 Before: WINTER, Chief Judge*, MESKILL and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 On appeal, plaintiffs-appellants in Marcus v. AT & T, No. 96-9244 (the "Marcus appellants"), and in Moss v. AT & T, No. 96-9256 (the "Moss appellants"), two separate class actions alleging similar deceptive billing practices by defendant-appellee AT & T Corporation, challenge the order of the United States District Court for the Southern District of New York (Michael B. Mukasey, District Judge) dismissing their complaints for failure to state a claim upon which relief can be granted. In addition, the Marcus appellants contend that, there being no basis for federal jurisdiction over their complaint, the district court improperly denied their motion to remand their complaint to state court.
 
 
 2
 We affirm.
 
 BACKGROUND
 
 3
 The Marcus and Moss appellants (collectively "appellants"), subscribers to AT & T's residential long-distance services, allege in two separate class action complaints that AT & T deceives its customers "by failing to disclose that residential customers are billed per minute rounded up to the next higher full minute for long distance service." Marcus Complaint p 2. AT & T's billing practice of rounding up does not appear on AT & T bills or on any material sent to AT & T's customers. Thus, for example, a telephone conversation that lasts one minute and one second is billed as a two-minute call, but the customer is not informed of the actual duration of the call. Appellants acknowledge that AT & T has disclosed its rounding-up practice in tariffs filed with the Federal Communications Commission (the "FCC") as required by the Federal Communications Act of 1934 (the "FCA"), 47 U.S.C. §§ 151 et seq., but contend that AT & T makes no effort--in its advertising, marketing, customer bills, or in any other manner--to inform customers that its billing practice of rounding up may be discovered by reviewing the tariffs it has filed with the FCC.
 
 
 4
 On October 19, 1995, the Marcus appellants filed a complaint in New York State Supreme Court asserting six causes of action: (1) deceptive acts and practices in violation of N.Y.Gen.Bus.L. §§ 349-350 (McKinney's 1988 & Supp.1996); (2) false advertising in violation of N.Y.Gen.Bus.L. § 350 (McKinney's 1988 & Supp.1996); and New York state common law claims of (3) fraud and deceit; (4) negligent misrepresentation; (5) breach of warranty; and (6) unjust enrichment and imposition of constructive trust. The Marcus appellants sought compensatory damages; punitive damages; a temporary, preliminary and/or permanent injunction requiring AT & T to provide some form of public notice or warning indicating its billing practices; and an injunction requiring disgorgement or imposing a constructive trust upon AT & T for the revenue received as a result of its allegedly illegal billing practices. On November 17, 1995, AT & T removed the Marcus action to federal district court pursuant to 28 U.S.C. § 1441(a). Following a pre-trial conference, the Marcus appellants moved to remand the case to state court. AT & T then moved to dismiss the Marcus complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 5
 On December 8, 1995, the Moss appellants filed their complaint in New York State Supreme Court. As in Marcus, the Moss action was removed to federal district court. Unlike the Marcus appellants, the Moss appellants did not make a motion to remand. Instead, the Moss appellants amended their complaint to assert, in addition to their state law claims, a federal common law fraud claim. The Moss amended complaint asserted causes of actions for (1) common law fraud and deceit in violation of both New York and federal common law; (2) state common law negligent misrepresentation; (3) deceptive acts in violation of N.Y.Gen.Bus.L. §§ 349-50; (4) false advertising in violation of N.Y.Gen.Bus.L. § 350; and (5) unjust enrichment and imposition of constructive trust. The Moss complaint sought damages, the disgorgement of all revenue AT & T received as a result of its allegedly wrongful practices, and injunctive relief requiring AT & T to notify its customers and the public of its rounding up billing policy. On January 4, 1996, AT & T moved to dismiss the Moss complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 6
 The two class actions were consolidated for consideration of the Marcus appellants' motion to remand their case and AT & T's motions to dismiss both actions. On August 21, 1996, the district court denied the Marcus appellants' motion to remand and granted AT & T's motions to dismiss both the Moss and Marcus complaints. See Marcus v. AT & T Corp., 938 F.Supp. 1158, 1164 (S.D.N.Y.1996).
 
 
 7
 On appeal, the Marcus appellants argue that the district court erred in finding that removal was proper and in dismissing their causes of action. The Moss appellants argue that the district court erred in dismissing their causes of action, but only to the extent that they are prohibited from seeking injunctive relief.
 
 DISCUSSION
 
 8
 I. Removal of Marcus Complaint to Federal Court
 
 
 9
 Any action that was originally filed in state court may be removed by a defendant to federal court only if the case originally could have been filed in federal court. 28 U.S.C. § 1441(a); see Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir.1997). Where, as here, there is no diversity of citizenship, "federal-question jurisdiction is required" for removal. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); 28 U.S.C. § 1331. On this appeal, the Marcus appellants claim that removal was improper and that the district court erred in denying their motion to remand their class action to state court.
 
 
 10
 The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule. That rule provides that federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, see Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908), and only when plaintiff's well-pleaded complaint raises issues of federal law, see Gully v. First Nat'l Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). Under the well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available. See Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429-30.
 
 
 11
 Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question. A claim that federal law preempts all state law remedies is usually only a defense to the state law action, and a case generally may not be removed to federal court on that basis, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. at 393, 107 S.Ct. at 2430; see also Hernandez, 116 F.3d at 38; Richard H. Fallon, et al., Hart & Wechsler's The Federal Courts and the Federal System 949 (4th ed.1996).
 
 
 12
 A. Complete Preemption as a Basis for Removal
 
 
 13
 One so-called exception to the well-pleaded complaint rule is the "complete preemption" doctrine, which has been explained as follows:
 
 
 14
 On occasion ... the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.
 
 
 15
 Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430 (internal citations and quotations omitted). The "complete preemption" doctrine, therefore, is not really an exception to the well-pleaded complaint rule, but a corollary to it. When federal common or statutory law so utterly dominates a preempted field that all claims brought within that field necessarily arise under federal law, a complaint purporting to raise state law claims in that field actually raises federal claims. Therefore, the well-pleaded complaint rule is satisfied, and removal is proper. See Robert A. Cohen, Note, Understanding Preemption Removal Under ERISA § 502, 72 N.Y.U.L.Rev. 578, 584-86 (1997).
 
 
 16
 In this case, AT & T seeks to uphold the district court's denial of the Marcus appellants' motion to remand, claiming that the Marcus claims arise under (1) the FCA and/or (2) federal common law, converting their state law causes of action into ones "arising under" federal law. AT & T argues that the Marcus action therefore was properly removed pursuant to the complete preemption doctrine. We disagree.
 
 
 17
 We easily dispose of the first claim. As we held in Nordlicht v. New York Tel. Co., 799 F.2d 859, 861 (2d Cir.1986), the FCA does not itself provide a basis for removal pursuant to the complete preemption doctrine. We stated that "the mere fact that the [FCA] governs certain aspects of [AT & T's] billing relationships with its customers does not mean that [the appellants'] claims arise under the Act." Id. Nordlicht precludes AT & T's argument that the FCA completely preempts "traditional [state] common law" claims.
 
 
 18
 We also disagree with AT & T that federal common law provides a basis for removal. Federal common law applies only in those limited situations where a uniform national rule is necessary to further the interest of the federal government, such as claims involving the obligations and rights of the United States and its officials or in those few areas involving "uniquely federal interests." Boyle v. United Technologies Corp., 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988). The Supreme Court has cautioned against the broad use of federal common law. See, e.g., Miree v. DeKalb County, 433 U.S. 25, 31-32, 97 S.Ct. 2490, 2494-95, 53 L.Ed.2d 557 (1977) (federal common law does not govern aircrash survivors' suit against county as third-party beneficiaries of a contract between the county and federal government). In Nordlicht, we held that the class action plaintiffs' state law fraud claim, challenging the fraudulent billing practices of a carrier, was removable to federal courts under the doctrine of complete preemption based upon the preemptive force of federal common law in the area of interstate telecommunications. We reasoned that, although the FCA itself did not provide for complete preemption of state law fraud claims, the enactment of such comprehensive legislation regulating telecommunications carriers evidenced Congress's intent to create a uniform system of federal common law for the adjudication of the liabilities and obligations of carriers. 799 F.2d at 862. See also, Ivy Broadcasting Co. v. American Tel. & Tel. Co., 391 F.2d 486, 491 (2d Cir.1968). Thus, while the Nordlicht court did not allow removal based directly on the FCA, it did allow removal on the basis of federal common law, relying on the comprehensive nature of the FCA and the regulatory scheme which it engendered.
 
 
 19
 Subsequent to Nordlicht, however, the Supreme Court decided Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66, 107 S.Ct. 1542, 1547-48, 95 L.Ed.2d 55 (1987), in which the Court sharply circumscribed the availability of removal based on complete preemption. Specifically, the Court held that the doctrine applies only in the very narrow range of cases where "Congress has clearly manifested an intent" to make a specific action within a particular area removable. Id. at 66, 107 S.Ct. at 1548. Justice Brennan cautioned in his concurrence in Metropolitan Life:
 
 
 20
 The Court holds only that removal jurisdiction exists when, as here, "Congress has clearly manifested an intent to make causes of action ... removable to federal court." In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.
 
 
 21
 481 U.S. at 67-68, 107 S.Ct. at 1548 (Brennan J., concurring) (internal citation omitted). The limited applicability of the complete preemption doctrine is evidenced by the fact that the Court has only approved its use in three areas: (1) claims under the Labor Management Relations Act by a labor union against an employer under a collective bargaining agreement, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 561-62, 88 S.Ct. 1235, 1237-38, 20 L.Ed.2d 126 (1968), but not claims arising from individual employment contracts, see Caterpillar, 482 U.S. at 398-99, 107 S.Ct. at 2432-33; (2) Employment Retirement and Insurance Security Act ("ERISA") suits by a beneficiary, see Metropolitan Life, 481 U.S. at 66-67, 107 S.Ct. at 1547-48, but not suits by a state against an ERISA plan, see Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 25-26, 103 S.Ct. 2841, 2854-55, 77 L.Ed.2d 420 (1983); and (3) certain Indian land grant rights, see Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666-67, 94 S.Ct. 772, 776-77, 39 L.Ed.2d 73 (1974). Thus, after Metropolitan Life, it is clear that the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field.
 
 
 22
 Given the narrow scope of the complete preemption doctrine after Metropolitan Life, absent some express statement or other clear manifestation from Congress that it intends the complete preemption doctrine to apply, we believe that federal common law does not completely preempt state law claims in the area of interstate telecommunications. The FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law. The FCA's savings clause states that nothing in the FCA "shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 (emphasis added). Moreover, while the FCA does provide some causes of action for customers,[1] it provides none for deceptive advertisement and billing. After Metropolitan Life, it would be disingenuous to maintain that, while the FCA does not preempt state law claims directly, it manages to do so indirectly under the guise of federal common law.
 
 
 23
 Furthermore, while the FCA does evidence a federal interest in uniformity of charges in telecommunications, see Boyle, 487 U.S. at 504, 108 S.Ct. at 2514, it does not indicate a uniquely federal interest, of the scope required for the application of federal common law, in preventing a carrier from misrepresenting the nature of its rates to its customers. The states may have an equal or greater interest in preventing such conduct as manifested by state consumer protection laws.
 
 
 24
 AT & T points to the recent Seventh Circuit decision in Cahnmann v. Sprint Corp., 133 F.3d 484 (7th Cir.1998) to support its claim of complete preemption. In Cahnmann, customers of Sprint, a long distance carrier, brought a class action in Illinois state court against Sprint alleging various state law breach of contract and fraud claims. The plaintiffs alleged that Sprint offered a year of free long distance telephone calls on Fridays to small business customers who agreed to subscribe to Sprint and who made certain minimum volume commitments. However, once the plaintiff class subscribed to Sprint, the carrier amended the applicable tariff, deleting several countries from the "Fridays Free" program. The plaintiff in effect sought to have the Illinois court throw out the amended tariff on the ground that this tariff violated the contract to provide service pursuant to the original tariff. Id. at 488.
 
 
 25
 Although the complaint purported to raise only state law claims, Sprint removed the case to federal district court. The district court allowed removal, reasoning that a suit to invalidate a filed tariff necessarily arises under federal law. Id. The Seventh Circuit affirmed. The court noted, correctly, that "[a] tariff filed with a federal agency is the equivalent of a federal regulation." Id. at 488. It concluded that "since the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce. Federal law does not merely create a right; it occupies the whole field, displacing state law." Id. (citing, inter alia, Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546-47). Applying the "artful pleading" doctrine, see Section I.B., infra, the court decided that "the case [was] removable to federal court even [though] the plaintiff[s] strenuously avoid[ed] mention of federal law in [their] complaint." Cahnmann, 133 F.3d at 490. The court went on to conclude that the plaintiffs' claims of fraud were completely preempted as well. Id. at 490-91.
 
 
 26
 While we agree with the Cahnmann court that the breach of contract claim at issue in that case actually arose under federal law, we cannot agree with Cahnmann's broader implications that every state law claim challenging a carrier's rates or billing practices necessarily arises under federal law. After Metropolitan Life, there is no complete preemption without a clear statement to that effect from Congress. Neither AT & T nor the Seventh Circuit has identified such a statement in the FCA. While federal law may dominate the consideration of most claims against telecommunications carriers, only Congress can say that federal law dominates the form of these claims as well.
 
 
 27
 In sum, the doctrine of complete preemption does not support removal of these actions. To the extent that Nordlicht may be read to express a contrary view, it is no longer the law after Metropolitan Life.
 
 
 28
 B. Breach of Warranty Claim as a Basis for Removal
 
 
 29
 AT & T makes an alternative argument in support of removal. It asserts that the Marcus appellants' breach of warranty claim, although presented in the complaint as a state law claim, in reality arises under federal law and therefore provides an alternative basis for removal jurisdiction pursuant to the artful-pleading doctrine. The artful-pleading doctrine, another corollary to the well-pleaded complaint rule, prevents a plaintiff from avoiding removal "by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint." Derrico v. Sheehan Emergency Hosp., 844 F.2d 22, 27 (2d Cir.1988) (internal quotations and citations omitted); see In re "Agent Orange" Prod. Liab. Litig., 996 F.2d 1425, 1430 (2d Cir.1993) ("[A] complaint which appears to be grounded solely in state law actually may be federal in nature, and thus removable, if its true nature has been disguised by the plaintiff's artful pleading."); Travelers Indemnity Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir.1986) ("[I]n certain limited circumstances a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by the use of 'artful pleading.' ").
 
 
 30
 AT & T argues that the breach of warranty claim necessarily arises from AT & T's only contract between it and its customers--the tariff filed with the FCC in accordance with 47 U.S.C. § 203(a). Because the tariff is filed with the FCC pursuant to the FCA, AT & T argues, the breach of warranty claim arises under federal law. We agree, and on this basis we affirm the district court's order denying the Marcus appellants' motion to remand.
 
 
 31
 The Marcus appellants' breach of warranty claim alleges that "by choosing defendant as their long distance telephone carrier or by using defendant for making long distance calls using residential service, [the Marcus appellants] entered into agreements for long distance telephone service" with AT & T. See Marcus Complaint p 42. The complaint further alleges that those "agreements" contain two warranties: (1) "that defendant would disclose the true nature of its billing practices for residential long distance telephone calls" and (2) that defendant "would bill in a manner that would result in 'True Savings' to its customers." Id.
 
 
 32
 In essence, the Marcus appellants' breach of warranty claim seeks to enforce the terms of the agreements between AT & T and its customers. Although the Marcus appellants do not expressly identify the source of these agreements, the only possible source is the tariffs filed in accordance with the FCA. Cf. Derrico, 844 F.2d at 28. "The legal relationship between AT & T and its customers is defined by the tariffs, which consist of the terms and conditions of the common carrier's service and rates, that AT & T is required to file and maintain with the" FCC under the FCA. American Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 552 (2d Cir.1996); see Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 19 (2d Cir.1994). Moreover, "federal tariffs are the law, not mere contracts." MCI Telecommunications Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir.1992). See also American Tel. & Tel. Co. v. City of New York, 83 F.3d at 552 (filed tariffs "have the force of law and are not simply contractual."); Carter v. American Tel. & Tel. Co., 365 F.2d 486, 496 (5th Cir.1966) ("[A] tariff, required by law to be filed, is not a mere contract. It is the law."). The "tariffs conclusively and exclusively enumerate the rights and liabilities of the contracting parties." American Tel. & Tel. Co. v. New York City Human Resources Admin., 833 F.Supp. 962, 970 (S.D.N.Y.1993) (emphasis added); United States v. DeBerry, 487 F.2d 448, 449 n. 1 (2d Cir.1973); Tishman & Lipp, Inc. v. Delta Air Lines, 413 F.2d 1401, 1403 (2d Cir.1969). See also MCI v. Garden State Inv., 981 F.2d at 387. Therefore, the breach of warranty claim necessarily raises a substantial federal question over which federal courts may properly exercise jurisdiction. We therefore affirm so much of the district court's order that denied the Marcus appellants' motion to remand and hold that removal was proper.
 
 
 33
 II. Merits of Marcus Appellants' Breach of Warranty Claim
 
 
 34
 Having determined that removal was proper, we turn to the Marcus appellants' assertion that the district court improperly dismissed their cause of action for breach of warranty. We review a district court's order granting a motion to dismiss de novo, construing all facts and drawing all inferences in favor of the non-moving party. Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 4-5 (2d Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2433, 138 L.Ed.2d 194 (1997).
 
 
 35
 As we have previously noted, the gravamen of the Marcus appellants' breach of warranty claim is that, in its filed tariff, AT & T expressly or impliedly warrants that AT & T would (1) "disclose the true nature of its billing practices for residential long distance telephone calls" and (2) "bill in a manner that would result in 'True Savings' to its customers." Marcus Complaint p 42. We conclude that the Marcus appellants have failed to state a claim upon which relief could be granted because the first purported warranty is met and the second warranty cannot be found in the tariff either expressly or by implication.
 
 
 36
 The tariff filed by AT & T with the FCC states in pertinent part:
 
 
 37
 A. Initial Period--Initial Period is the initial rate increment of a [long distance] call. The specific length of the initial period is indicated on the applicable rate schedule.
 
 
 38
 B. Additional Minute--Additional Minute is the rate element used to bill for the chargeable time when a [long distance] call continues beyond the initial period. Additional Minute begins when the initial period ends (e.g., with the second minute of a call for which the initial period is one minute). Additional Minute rates apply to each additional minute, or any fraction thereof, that chargeable time continues beyond the initial period.
 
 
 39
 Peterson Aff., Ex. A (Dec. 7, 1995) (emphasis added). Thus, AT & T expressly discloses its billing practices in the filed tariff; the Marcus appellants have not shown why this disclosure is insufficient to meet the first claimed warranty obligation.
 
 
 40
 As to the second claimed warranty, the tariff makes no promise with regard to billing practices that will result in "True Savings," an advertising slogan from which contractual obligations generally do not arise, see generally E. Allan Farnsworth, 1 Farnsworth on Contracts § 3.10 at 217-18 (1990). As the Marcus appellants concede, "AT & T's tariffs do not contain any provisions concerning disclosure of its rounding-up practices in its bills or advertisements (or elsewhere), and plaintiffs accordingly were unable to sue for tariff violations." Marcus Appellants's Reply Brief at 2. We too find no implied or express promise on which the Marcus appellants' breach of warranty claims can rest and therefore affirm the district court's dismissal of the breach of warranty claim.
 
 
 41
 III. Jurisdiction Over and Merits of Appellants' State Law Claims
 
 
 42
 A. District Court's Exercise of Supplemental Jurisdiction
 
 
 43
 The Marcus appellants next contend that, even if the district court properly denied their motion to remand, the district court abused its discretion in exercising supplemental jurisdiction over their remaining state law claims. We disagree.
 
 
 44
 We review the decision of the district court to exercise supplemental jurisdiction over state law claims for an abuse of discretion. See 28 U.S.C. § 1367(c); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Bleiler v. Cristwood Constr., Inc., 72 F.3d 13, 16 (2d Cir.1995). "In reviewing such a decision to retain jurisdiction we consider factors such as judicial economy, convenience, fairness, and comity." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191 (2d Cir.1996). In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994); Baylis v. Marriott Corp., 843 F.2d 658, 664-65 (2d Cir.1988). Dismissal of the pendant state law claims is not, however, "absolutely mandatory" even where the federal claims have been dismissed before trial, and "[o]ne factor that may sometimes favor retaining pendant jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated." Id. at 665. Because the remaining state law claims implicate the doctrine of preemption, we cannot say that the district court's exercise of supplemental jurisdiction in this case was an abuse of its discretion. We turn, therefore, to an examination of whether the remaining causes of actions were properly dismissed.
 
 
 45
 B. Dismissal of Appellants' State Law Claims
 
 
 46
 The Marcus and Moss appellants claim, inter alia, (1) that AT & T has engaged in fraud and deceit by failing to disclose its policy of rounding up;[2] (2) that AT & T has negligently misrepresented its billing practices; (3) that AT & T has engaged in deceptive acts and practices in violation of New York's Consumer Protection Act, N.Y.Gen.Bus.L. §§ 349-350; (4) that AT & T was unjustly enriched by billing customers for unused time; and (5) that AT & T engaged in false advertising in violation of the Consumer Protection Act, N.Y.Gen.Bus.L. § 350. The district court dismissed all of these claims, holding that they were barred by the filed rate doctrine. We agree.
 
 
 47
 The filed rate doctrine, also known as the filed tariff doctrine, is derived from the tariff-filing requirements of the FCA, see 47 U.S.C. § 203(a),[3] and "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981) ("Arkla").
 
 
 48
 The filed rate doctrine is motivated by two "companion principles"--(1) preventing carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform. Wegoland, 27 F.3d at 19; see also H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 488 (8th Cir.1992).
 
 
 49
 Application of the filed rate doctrine in any particular case is not determined by the culpability of the defendant's conduct or the possibility of inequitable results. See e.g., Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 129, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94 (1990) (federal agency has no authority to excuse shipper from paying filed rate even though carrier and shipper had privately negotiated contract for shipment at lower rate and agency found that allowing carrier to charge filed rate was an "unreasonable" practice); Square D Co. v. Niagara Frontier Tariff Bureau, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) (filed rate doctrine bars damage action against motor carriers under antitrust laws even though carriers colluded to set artificially high filed rate); Arkla, 453 U.S. at 579-80, 101 S.Ct. at 2931-32 (filed rate doctrine bars breach of contract action by natural gas producers even though defendant-buyer failed to disclose its arrangement to buy gas from a third-party in violation of contract); Keogh v. Chicago & Northwestern Ry. Co., 260 U.S. 156, 163, 43 S.Ct. 47, 49-50, 67 L.Ed. 183 (1922) (filed rate doctrine bars recovery for antitrust damages against carriers who colluded to set artificially high shipment rate); Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 98, 35 S.Ct. 494, 495-96, 59 L.Ed. 853 (1915) (filed rate doctrine allows plaintiff-carrier to charge defendant-traveller filed rate even though carrier had agreed to transport traveller at a lower rate); Armour Packing Co. v. United States, 209 U.S. 56, 72, 28 S.Ct. 428, 431-32, 52 L.Ed. 681 (1908) (shipper is required to pay carrier filed rate even though it had contracted with carrier to pay lower rate); Sun City Taxpayers' Ass'n v. Citizens Utils. Co., 45 F.3d 58, 62 (2d Cir.1995) (damage action by consumer group against carrier is barred by filed rate doctrine despite carrier's fraud during rate-making process); Wegoland, 27 F.3d at 22 (same); H.J. Inc., 954 F.2d at 494 (same). Nor does the doctrine's application depend on the nature of the cause of action the plaintiff seeks to bring. See e.g., Square D, 476 U.S. at 412-13, 106 S.Ct. at 1924-25 (plaintiff seeking antitrust damages); Arkla, 453 U.S. at 573-75, 101 S.Ct. at 2928-29 (breach of contract); Keogh, 260 U.S. at 159-60, 43 S.Ct. at 48-49 (antitrust damages); Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 430, 27 S.Ct. 350, 351, 51 L.Ed. 553 (1907) (challenge to reasonableness of filed rate); Sun City, 45 F.3d at 60-61 (RICO); Wegoland Ltd. v. NYNEX Corp., 806 F.Supp. 1112, 1113 (S.D.N.Y.1992) (common law fraud, negligent misrepresentation, and RICO), aff'd 27 F.3d 17 (2d Cir.1994). Rather, the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue. See H.J. Inc., 954 F.2d at 489 ("[T]he underlying conduct [of the defendant] does not control whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.").
 
 
 50
 Thus, "[i]gnorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination." Maxwell, 237 U.S. at 97, 35 S.Ct. at 495.
 
 
 51
 This rigid approach was deemed necessary to prevent carriers from intentionally "misquoting" rates to shippers as a means of offering them rebates or discounts. As the Commission itself found: "[P]ast experience shows that billing clerks and other agents of carriers might easily become experts in the making of errors and mistakes in the quotation of rates to favored shippers, while other shippers, less fortunate in their relations with carriers and whose traffic is less important, would be compelled to pay the higher published rates."
 
 
 52
 Maislin, 497 U.S. at 127-28, 110 S.Ct. at 2766 (citations omitted). With the foregoing in mind, we consider each of appellants' state law claims in turn.
 
 1. State and Federal Common Law Fraud
 
 53
 All appellants allege that AT & T's advertising and bills are false and misleading because they fail to disclose the rounding-up policy. They argue that but for AT & T's allegedly fraudulent practices, they would have switched carriers, or would have altered their behavior by speaking on the telephone in full minute increments, so as not to be billed for time that they did not use. On appeal, the Marcus appellants seek compensatory damages equal to the difference between AT & T's rate under the filed tariff and the best alternative rate under a competitor's filed tariff (the rate they would have paid had they switched), as well as punitive damages and an injunction forcing AT & T to provide notice of its billing practices. The Moss appellants do not appeal the dismissal of their claims for compensatory damages; they have limited their appeal to their claims for injunctive relief. We find that these claims are barred by the filed rate doctrine.
 
 
 54
 Although the Supreme Court has reserved the question of whether the filed rate doctrine would bar an action against a carrier that engaged in fraudulent conduct, see Arkla, 453 U.S. at 583 n. 13, 101 S.Ct. at 2933 n. 13, it has stated that "[n]either the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay." Kansas City Southern Ry. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913); see also Keogh, 260 U.S. at 163, 43 S.Ct. at 49 ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier."); Armour Packing, 209 U.S. at 72, 28 S.Ct. at 431 (doctrine is "applicable to every method of dealing by a carrier by which the forbidden result could be brought about"). In the context of the Interstate Commerce Act, on which the FCA is modelled, see MCI Telecommunications Corp. v. American Tel. & Tel. Co., 512 U.S. 218, 229, 114 S.Ct. 2223, 2230-31, 129 L.Ed.2d 182 (1994), the Court noted that it has "never held that a carrier's unreasonable practice justifies departure from the filed tariff schedule." Maislin, 497 U.S. at 129, 110 S.Ct. at 2767. Responding to an argument that the filed rate doctrine resulted in a windfall for the carrier, the Court stated:
 
 
 55
 we have never accepted the argument that such "equities" are relevant to the application of [the filed rate doctrine]. Indeed, strict adherence to the filed rate has never been justified on the ground that the carrier is equitably entitled to that rate, but rather that such adherence, despite its harsh consequences in some cases, is necessary to enforcement of the [Interstate Commerce] Act.
 
 
 56
 Id. at 131-32, 110 S.Ct. at 2769 (internal citations omitted).
 
 
 57
 In Wegoland, we held that the filed rate doctrine barred plaintiffs' class action for common law fraud against carriers who had provided the FCC with misleading information in order to gain the FCC's approval of the proposed filed rate. 27 F.3d at 20. We reasoned that, in calculating damages, the court would have to determine the reasonable rate absent the carriers' fraud, a task reserved by the FCA to the exclusive province of the FCC, stating:
 
 
 58
 If courts were licensed to enter this process under the guise of ferreting out fraud in the rate-making process, they would unduly subvert the regulatory agencies' authority and thereby undermine the stability of the system. For only by determining what would be a reasonable rate absent the fraud could a court determine the extent of the damages. And it is this judicial determination of a reasonable rate that the filed rate doctrine forbids.
 
 
 59
 Id. at 21. Accord Sun City, 45 F.3d at 62 (interpreting Wegoland); Taffet v. Southern Co., 967 F.2d 1483, 1494-95 (11th Cir.1992) (en banc) (filed rate doctrine applies despite defendant's fraudulent conduct); H.J. Inc., 954 F.2d at 491-92 (filed rate doctrine bars RICO claim for fraud on agency; rejecting suggestion that Arkla left open possibility of broad fraud exception to the filed rate doctrine); see also Marco Supply Co. v. AT & T Communications, Inc., 875 F.2d 434, 436 (4th Cir.1989) (per curiam) (filed rate doctrine barred willful misrepresentation claim); cf. Square D, 476 U.S. at 416-17, 106 S.Ct. at 1927 ("[t]he rights as defined by the tariff cannot be varied or enlarged by ... tort of the carrier").
 
 
 60
 The Marcus appellants attempt to distinguish their claims from those held to be barred in Wegoland by asserting that their fraud claim rests on AT & T's failure to disclose, that is, fraud on the consumer, and not on fraud in the rate-making process. Whether this distinction alters our analysis depends on whether allowing the appellants to pursue their claims for compensatory damages or injunctive relief would undermine either of the two interests furthered by the filed rate doctrine--nondiscrimination and nonjusticiability. As the Appellate Division has recently concluded in a similar case challenging another carrier's rounding-up practice, "[w]e find the distinction [between fraud on the agency and fraud on the consumer] to be one without a difference." Porr v. NYNEX Corp., 230 A.D.2d 564, 660 N.Y.S.2d 440, 446 (1997).
 
 A. Appellants' Claim for Damages
 
 61
 Turning first to the Marcus appellants' claims seeking compensatory damages for AT & T's allegedly fraudulent conduct, we agree with the district court that an award of damages would implicate the nondiscrimination and nonjusticiability strands of the filed rate doctrine, and that the doctrine therefore bars such claims. First, claims for compensatory relief "undermine the congressional scheme of uniform rate regulation." Arkla, 453 U.S. at 579, 101 S.Ct. at 2927; see also Keogh, 260 U.S. at 163, 43 S.Ct. at 50 ("Uniform treatment would not result, even if all sued, unless the highly improbable happened, and the several juries and courts gave to each the same measure of relief."). Plaintiffs who were able to prove their claims and recover damages would effectively receive a discounted rate for phone service over other AT & T customers.
 
 
 62
 [I]f the plaintiff[s] were allowed to collect damages because of their purported reliance upon [the carrier's] non-disclosure, they would have won for themselves a reduced rate for their local telephone service. Nonparty subscribers to the same service would of necessity pay a higher rate. Such a "discriminatory" result cannot be squared with the filed rate doctrine's mandate of equal rates for equal service.
 
 
 63
 Porr, 660 N.Y.S.2d at 446. Furthermore,
 
 
 64
 The duty to file rates with the Commission and the obligation to charge only those rates have always been considered essential to preventing price discrimination and stabilizing rates.
 
 
 65
 Maislin, 497 U.S. at 126, 110 S.Ct. at 2766 (internal citations omitted); see Keogh, 260 U.S. at 163, 43 S.Ct. at 49-50 ("This stringent rule prevails, because otherwise the paramount purpose of Congress--prevention of unjust discrimination--might be defeated."). Thus, the nondiscrimination strand of the filed rate doctrine would be undermined by an award of compensatory damages.
 
 
 66
 Second, and just as important, an award of compensatory damages would violate the nonjusticiability strand of the doctrine. The Marcus appellants seek damages equal to the difference between AT & T's rate and the best alternative rate available under a competitor's tariff. They argue that this award would not violate the nonjusticiability strand because the court would not be required to determine a reasonable rate in order to grant relief. The Marcus appellants are correct that awarding these damages would not amount to judicial rate-making per se. However, we disagree with their claim that the nonjusticiability strand would not be implicated by such an award. The filed rate doctrine prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority.
 
 
 67
 In Sun City, we outlined three factors underlying the nonjusticiability strand of the filed rate doctrine:
 
 
 68
 (1) [L]egislatively appointed regulatory bodies have institutional competence to address rate-making issues;
 
 
 69
 (2) courts lack the competence to set utility rates; and
 
 
 70
 (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime.
 
 
 71
 45 F.3d at 62 (citing Wegoland, 27 F.3d at 21). The FCC has approved AT & T's filed tariff whereby customers are billed in whole-minute increments. This tariff is by definition reasonable unless and until the FCC, as the "legislatively appointed regulatory bod[y] [with] institutional competence," says otherwise. Sun City, 45 F.3d at 62. Yet the plaintiff class asks us to excuse them from paying this tariff. But plainly, such an order would "subvert the authority of [the FCC] and undermine the regulatory regime." Id. In sum, we cannot award damages in this case without undermining the authority of the FCC, and therefore, the principle of nonjusticiability.
 
 
 72
 The Marcus appellants argue that the filed rate doctrine nonetheless should not bar their claims. First, they claim that the nondiscrimination strand of the filed rate doctrine is not implicated because their action is brought on behalf of all deceived consumers as a class. See Marcus Appellants' Brief at 35-36. We agree that "the concerns for discrimination are substantially alleviated in [a] putative class action." Wegoland, 27 F.3d at 22. However, the Supreme Court has rejected the suggestion that "the development of class actions, which might alleviate the ... concern about [nondiscrimination,]" made the nondiscrimination principle inapplicable to a putative class action suit. Square D, 476 U.S. at 423, 106 S.Ct. at 1930. We may not depart from this precedent. Until the Supreme Court says otherwise, it seems that nondiscrimination concerns remain viable even in the context of a class action lawsuit. Cf. Wegoland, 27 F.3d at 21-22 (although class action mechanism alleviates concern for price discrimination, it does not address other concerns underlying filed rate doctrine including "the important concerns of agency authority, justiciability, and institutional competence"); Sun City, 45 F.3d at 62 ("the filed rate doctrine applies whether or not the plaintiffs are suing for a class, and regardless of the plaintiff's motivations in maintaining the litigation") (internal citations and quotations omitted).
 
 
 73
 The Marcus appellants next urge us to modify the filed rate doctrine to allow nondisclosure claims, arguing that the doctrine is no longer necessary to avoid price discrimination in light of the increasing competition among long-distance service carriers. The Marcus appellants claim that while strict adherence to the filed rate may have prevented price discrimination and unfair practices while AT & T maintained a monopoly over long distance services, it frustrates those same goals now that there is greater competition in the market. See Marcus Appellants' Brief at 36-37.
 
 
 74
 In rejecting a similar argument to modify the filed rate doctrine in light of changed circumstances, the Supreme Court explained that while it had "considerable sympathy" to such arguments, " 'such considerations address themselves to Congress, not to the courts.' " MCI v. AT & T, 512 U.S. at 234, 114 S.Ct. at 2233 (quoting Armour Packing, 209 U.S. at 82, 28 S.Ct. at 435); see also Square D, 476 U.S. at 424, 106 S.Ct. at 1930 ("[T]he developments in the six decades since Keogh was decided are insufficient to overcome the strong presumption of continued validity that adheres in the judicial interpretation of a statute."). Like the Supreme Court, we too are sympathetic to the argument that, at least in the telecommunications industry, strict adherence to the filed rate doctrine is no longer required. But absent Congressional authorization or direction from the Supreme Court, we are in no position to modify the doctrine.
 
 
 75
 For the foregoing reasons, we affirm the district court's dismissal of the Marcus appellants' fraud claims to the extent that they seek compensatory damages and other monetary relief. We add that the filed rate doctrine likewise bars all of the remaining state law claims for damages brought by the Marcus appellants, because any award of damages would, for identical reasons, implicate the nondiscrimination and nonjusticiability strands of the filed rate doctrine.
 
 B. Appellants' Claims for Injunctive Relief
 
 76
 We next examine the Marcus and Moss appellants' claims for injunctive relief based on the fraud purportedly committed by AT & T. Again, we must consider whether an award of injunctive relief would implicate the nondiscrimination or the nonjusticiability strand of the filed rate doctrine. If so, then the plaintiffs' claims are barred by the filed rate doctrine.
 
 
 77
 First, it appears that the injunctive relief requested by the appellants would not result in price discrimination since the plaintiffs would still pay the filed rate. The injunction, should plaintiffs establish the merits of their claims, would only require AT & T to publicly disclose its rounding-up practice beyond its disclosure in its filed rate; the filed rate would remain unchanged and no individual ratepayer would be excused from paying the filed rate. Thus, while a suit for damages is unavailable because it implicates the interest in preventing price discrimination, a suit for injunctive relief appears not to interfere with the nondiscrimination policy underlying the filed rate doctrine. See Gelb v. American Tel. & Tel. Co., 813 F.Supp. 1022, 1033 (S.D.N.Y.1993) (claim of fraud against consumer for failure to disclose initial call fee on calling cards is not barred where plaintiff sought injunctive relief).
 
 
 78
 Second, in contrast to the Marcus appellants' claims for damages, allowing the appellants' claims for injunctive relief in this case would neither enmesh the court in the rate-making process nor undermine the regulatory authority of the FCC. Cf. Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 304-05, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (federal court need not await determination by federal regulatory agency as to whether failure to disclose was deceptive practice under federal tariff, reasoning that plaintiff "makes no challenge to any provision in the tariff, and indeed there is no tariff provision ... applicable to disclosure practices" and "[t]he standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts"); In re Long Distance Telecommunications Litig., 831 F.2d 627, 633 (6th Cir.1987) (state law fraud claims arising from carrier's failure to disclose its policy of charging for uncompleted calls "do not require agency expertise for their treatment and are within the conventional experience of judges") (internal quotations omitted); Kellerman v. MCI Telecomms. Corp., 112 Ill.2d 428, 98 Ill.Dec. 24, 32, 493 N.E.2d 1045, 1053 (1986) (state law fraudulent and deceptive advertising claims against carrier do not concern reasonableness of rates). An injunction would require only that AT & T publicize the tariff which it has already filed with the FCC, including its policy of rounding up to the next minute. The reasonableness of the rounding-up policy would remain a question for the regulating agency to resolve.
 
 
 79
 Thus, it appears that, if the appellants can establish the substance of their state and federal common law fraud claims, the filed rate doctrine would not bar them. However, we need not finally resolve that question because the appellants cannot prove the claim of fraud upon which their request for injunctive relief is premised.
 
 
 80
 In order to state a claim for fraud under federal or New York state common law a plaintiff must allege that the defendant made a material false representation, that the defendant knew of the falsity (scienter), that the defendant acted with intent to defraud, that the plaintiff reasonably relied on the false representation, and damages. See Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083-84, 86 L.Ed. 1510 (1942) (federal common law); Turtur v. Rothschild Registry Int'l., Inc., 26 F.3d 304, 310 (2d Cir.1994) (New York common law); Gershon v. Hertz Corp., 215 A.D.2d 202, 626 N.Y.S.2d 80, 81-82 (1995) (New York common law).
 
 
 81
 The appellants cannot demonstrate that they reasonably relied on any misrepresentations by AT & T. As a matter of law, it would not be reasonable for a consumer to harbor a belief about AT & T's billing practices that is inconsistent with the tariff AT & T has filed with the FCC. Central to the filed rate doctrine is the "presumed knowledge" doctrine. Under that doctrine, "[t]he [customer's] knowledge of the lawful rate is conclusively presumed." Carl, 227 U.S. at 653, 33 S.Ct. at 395. Accord Maxwell, 237 U.S. at 97-98, 35 S.Ct. at 495-96; Marco Supply, 875 F.2d at 436. Unless knowledge of the filed rate were presumed as a matter of law, carriers could undermine the filed rate doctrine by intentionally quoting lower rates to favored customers. See Maislin, 497 U.S. at 127-28, 110 S.Ct. at 2766-67. Because the appellants are held to know the filed rate and thus AT & T's practice of rounding up, it would be unreasonable for them to rely on any price quotes to the contrary.
 
 
 82
 In all likelihood, the "presumed knowledge" doctrine is little more than legal myth when applied to today's long-distance telephone customers. However accurate the presumption may have been when applied to shippers and railway carriers in the earliest decades of this century, we doubt that it reflects current reality. We can easily imagine what results would be yielded by a survey that asked AT & T long-distance customers: "When was the last time you checked the tariffs your long distance carrier has filed with the FCC?"[4] However, the "presumed knowledge" doctrine is an integral part of the filed rate doctrine and, absent its reconsideration by Congress or the Supreme Court, we are bound by eighty years of caselaw to reaffirm it. See MCI v. AT & T, 512 U.S. at 234, 114 S.Ct. at 2233. Therefore, the district court properly dismissed the appellants' claims for injunctive relied based upon fraud.
 
 
 83
 2. Negligent Misrepresentation and Deceptive Acts
 
 
 84
 As we held in Section III.B.1.a., supra, the appellants may not maintain any action for damages based on AT & T's rounding-up policy. We turn to whether appellants can establish a claim for injunctive relief based on negligent misrepresentation or deceptive acts. In order to establish their claim of negligent misrepresentation in a commercial context, appellants must demonstrate that AT & T failed to speak with care, that it owed the appellants a special duty of care when speaking, that AT & T was aware of the use to which the information would be put and supplied it for that purpose, that the appellants justifiably relied on the information, and that the appellant was damaged by his reliance. See Kimmell v. Schaefer, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 718-19, 675 N.E.2d 450, 453-54 (1996); Mallis v. Bankers Trust Co., 615 F.2d 68, 82 (2d Cir.1980).
 
 
 85
 To state a claim under the New York deceptive acts statute, a plaintiff must allege a material deceptive act or practice directed to consumers that caused actual harm. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741, 744-45 (1995); McGill v. General Motors Corp., 231 A.D.2d 449, 647 N.Y.S.2d 209, 210 (1996). An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer. Oswego, 623 N.Y.S.2d at 533, 647 N.E.2d at 745; Gershon, 626 N.Y.S.2d at 81.
 
 
 86
 The district court properly dismissed appellants' claims for negligent misrepresentation and deceptive acts. To succeed under either claim, appellants would have to show that they reasonably relied on any statements made by AT & T. However, as we have explained, a reasonable consumer may not rely on any statements by AT & T that contradict the terms of its filed tariff (whether caused by carelessness or by an intent to defraud), because consumers are conclusively presumed to know the legal tariffs filed with the FCC. See Maislin, 497 U.S. at 127-28, 110 S.Ct. at 2766-67. In addition, both claims require proof of damages. As the district court concluded, "[appellants] have suffered no legally cognizable damages because they paid the tariff rate." 938 F.Supp. at 1172. Accord Porr, 660 N.Y.S.2d at 447 ("any 'harm' allegedly suffered by the plaintiff is illusory, because he has merely paid the filed tariff rate that he was required to pay.") (internal citations omitted).
 
 
 87
 Finally, appellants claim that AT & T's failure to disclose its rounding-up policy on customer bills prevents appellants from altering their behavior to lower their long-distance telephone charges is without merit. In essence, appellants argue that AT & T has the duty to inform its customers that by speaking in whole minute increments they are getting the most value for their money. However, AT & T has no such duty under New York law. See Gershon, 626 N.Y.S.2d at 81 (under deceptive act statute, defendant car rental company has no duty to disclose alternative rental arrangements at lower rates other than those customer had inquired about).
 
 3. Unjust Enrichment
 
 88
 In order to succeed on their claim for unjust enrichment, the appellants must demonstrate that, in the absence of a contract, one party nonetheless possesses money "under such circumstances that in equity and good conscience he ought not to retain it, and which ex ae quo et bono belongs to another." In re Chateaugay Corp., 10 F.3d 944, 957-58 (2d Cir.1993) (internal quotations omitted). The district court properly dismissed this claim as well. AT & T has charged only the filed rates that it is required by law to charge; it is not in possession of any money which, "in equity and good conscience," properly belongs to appellants.
 
 4. False Advertising
 
 89
 Next, we consider whether the appellants may seek injunctive relief based on a claim of false advertising. In order to establish a claim of false advertising under New York's General Business Law, appellants must demonstrate that AT & T's advertisements are "misleading in a material respect ... [including] the extent to which the advertising fails to reveal [material] facts." N.Y.Gen.Bus.L. § 350-a(1) (McKinney 1988 & Supp.1996). Appellants claim that "[AT & T's] use of various forms of media to advertise, call attention to, or give publicity to the sale of long distance telephone service, which was falsely represented by [AT & T's] failure to disclose that residential consumers are billed for calls by the minute rounded up to the next higher full minute, constitutes false advertising." Moss Appellants' Complaint p 29. In Porr, the Appellate Division of the New York State Supreme Court considered a similar false advertising claim. See 230 A.D.2d 564, 660 N.Y.S.2d 440. In that case, plaintiffs claimed that the advertisements of a local carrier were misleading in material respects because the advertisements failed to disclose the carrier's policy of rounding up phone charges to the next minute. Id., 660 N.Y.S.2d at 442. The court concluded that, under the false advertisement statute, "[s]ince the defendants' tariffs were at all times a matter of public record and were in no way concealed, there is no underpinning for any cause of action for ... false advertising." Id., 660 N.Y.S.2d at 448. We agree with the Appellate Division's reasoning. In the instant case, AT & T's tariff is similarly a matter of public record, and is not concealed. The district court properly dismissed the appellants' claims for injunctive relief based on false advertising.
 
 
 90
 We note, finally, that we do not hold that AT & T could avoid the imposition of injunctive relief if it affirmatively misrepresented to consumers as a whole what its rates are; we hold only that in cases such as this one, where AT & T has complied with federal laws regarding rates, filed those rates, and charged only those rates, its failure to more actively publicize those rates is not a basis of liability for breach of warranty, fraud and deceit, negligent misrepresentation, deceptive acts or practices, unjust enrichment, or false advertisement.
 
 CONCLUSION
 
 91
 Based on the foregoing, we affirm. The Marcus appellants' motion to remand was properly denied because the Marcus complaint's fifth cause of action for breach of warranty could have been originally filed in federal court and supplemental jurisdiction over the state law claims was not an abuse of discretion. Moreover, the claims of all appellants were properly dismissed as either barred by the filed rate doctrine or because no reasonable consumer would rely on the billing statements to his or her detriment. Therefore, the district court properly dismissed the claims.
 
 
 
 *
 Judge Winter became Chief Judge on July 1, 1997
 
 
 [1]
 See, e.g., 47 U.S.C. §§ 203(c)(1), 207 (authorizing suit in federal district court to challenge carrier's collection of tariffs which are "greater or less or different" than those filed with the FCC)
 
 
 [2]
 The Moss appellants also raise a claim of federal common law fraud, in addition to New York state common law fraud. Because the standards for fraud are practically identical, we consider these claims together
 
 
 [3]
 Section 203(a) provides, in relevant part:
 Every common carrier ... shall ... file with the [FCC] and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication between the different points on its own system.... Such schedules shall contain such other information, and be printed in such form, and be posted and kept open for public inspection in such places, as the [FCC] may by regulation require....
 47 U.S.C. § 203(a).
 
 
 [4]
 Note however, that the presumption does have some currency in the instant case. No reasonable consumer would believe that all of the calls he has ever made with AT & T just happened to last for increments of one minute. "The only reasonable conclusion is that the carrier must round up or down." Marcus, 938 F.Supp. at 1174