**KLINE AND COMPANY and Nancy Barcelo, On Their Behalf and On Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**MCI COMMUNICATIONS CORPORATION, Defendant.**

**No. CIV. A. 98–11854–JLT.**

United States District Court, D. Massachusetts.

March 2, 2000.

Thomas G. Shapiro, Edward F. Haber, Shapiro, Grace & Haber, Boston, MA, for Plaintiffs.

Mark A. Berthiaume, Jonathan D. Cohen, Goldstein & Manello, P.C., Boston, MA, Donald B. Verrilli, Jr., Jenner & Block, Thomas F. O'Neil, III, MCI Worldcom, Inc., Washington, DC, for Defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs bring this class action suit for money damages and injunctive and declaratory relief, alleging that Defendant's "Federal Universal Service Fee" contained in its tariff F.C.C. No. 1 violates section 201(b) of the Communications Act of 1934, 47 U.S.C. § 201(b), and constitutes a breach of contract. Defendants have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiffs' claims on grounds that the "filed-rate" doctrine precludes this court's consideration of those claims. For reasons set forth below, Defendants' motion is ALLOWED.

### I.

Plaintiffs, Kline and Co. and Nancy Barcelo, are representatives of a class of Plaintiffs who purchased long distance telephone services from Defendant, MCI Telecommunication Corp. ("MCI"). Plaintiffs also are representatives of a "subclass" of Plaintiffs for whom Defendant allegedly agreed not to raise domestic dial rates until the year 2000. Defendant is a Delaware corporation with offices in Massachusetts, and is the second largest provider of long distance telecommunication services in the United States.

As a "common carrier" of telecommunication services under the Communications Act of 1934, 47 U.S.C. §§ 151–613 ("Communications Act"), Defendant must file with the Federal Communications Commission ("FCC") "tariffs" containing all of its "charges" for interstate services and all "classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Carriers are bound to provide telecommunication services under the conditions contained in their tariffs. *See* 47 U.S.C. § 203(c). Defendant filed tariff F.C.C. No. 1 with the FCC in accordance with these requirements.

Pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 254, the FCC requires carriers like Defendant to contribute a percentage of their revenues to a "Universal Service Fund" ("the Fund"). The purpose of the Fund is to subsidize the cost of telecommunication services to schools, libraries, rural health care providers and low income consumers. On a quarterly basis, the FCC assesses carriers a "Universal Service Contribution" ("USC")

charge. Carriers are authorized to recoup this charge from their customers.

In 1998, the FCC required Defendant to contribute between 3.90 and 3.93 percent of its long distance revenues, by quarter, to the Fund. Throughout most of 1998, however, Defendant charged customers like Plaintiffs a "Federal Universal Service Fee" ("FUSF") of 5% of its charges for long distance services, purportedly to recoup the USC charge. Defendant amended its tariff F.C.C. No. 1 to include the FUSF on December 19, 1997 (effective January 1, 1998) for business customers, and on June 2, 1998 (effective July 1, 1998) for residential customers.

## II.

Section 203(a) of the Communications Act requires every common carrier to file with the FCC "schedules," called tariffs, "showing all charges" and "showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Section 203(c) makes it unlawful for a carrier to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." 47 U.S.C. § 203(c). The purpose of section 203(c) is to prevent unreasonable and discriminatory charges. *American Tel. & Tel. Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 1962, 141 L.Ed.2d 222 (1998).

Concomitant with section 203(c), the century-old "filed-rate" doctrine associated with the Interstate Commerce Act ("ICA") applies as well to the Communications Act. *See id.* In *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915), the Supreme Court outlined the basic contours of the "filed-rate" doctrine under the ICA:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the filed rate. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* at 97, 35 S.Ct. 494. Even if the carrier fraudulently misrepresents its rates and the customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff. *See American Tel. & Tel. Co.*, 118 S.Ct. at 1962–63. As a corollary, the doctrine proscribes the court from rendering any relief that effectively would enforce a "charge" between the carrier and the customer not contained in the carrier's filed tariff.

Plaintiffs seek remedies that, in effect, would afford them a rebate on Defendant's FUSF by way of money damages as well as injunctive relief from future FUSF payments. Plaintiffs' claims rely on the following theories: (1) Defendant's FUSF raises more revenue than Defendant requires to meet its USF obligations; (2) Defendant misrepresented the excessive character of its FUSF; and (3) Defendant breached its promise to Plaintiffs' "subclass" that it would not raise domestic dial rates until the year 2000. To provide Plaintiffs the relief they seek, however, would be to enforce, in effect, a "charge" other than the rate contained in Defendant's amended tariff F.C.C. No. 1. Because the "filed-rate" doctrine expressly proscribes the court from affording Plaintiffs such relief, Plaintiffs' claims all are barred.

It is of no moment whether Plaintiffs' claims are characterized as common law contract or section 201(b) dependent claims, nor whether they derive from federal or state law. *See Keogh v. Chicago*

*& Northwestern R. Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 67 L.Ed. 183 (1922) ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier."). The "filed-rate" doctrine is not avoided by artful pleading. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 490 (7th Cir.1998). The "filed-rate" doctrine prohibits the court from affording the relief Plaintiffs seek irrespective of the derivation of their claims because, as previously stated, granting Plaintiffs relief effectively would enforce a "charge" not contained in Defendant's amended tariff F.C.C. No. 1.[1]

In *Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir.1998), the Seventh circuit reached a like conclusion on analogous facts. In that case, the plaintiff class sued Sprint Corporation, asserting that Sprint's decision to amend its FCC tariff to delete ten countries from its free Friday calling plan, of which the plaintiffs were customers, constituted a breach of contract. Applying the "filed-rate" doctrine, the court held that the plaintiff's claims were barred. The court "assume[d] that Sprint had no good reason for the amendmentor, worse, that it was planning from the start to renege on the offer of a full year of free Friday calls to anywhere in the world." *Id.* at 486. It nevertheless reasoned that Plaintiff's claims necessarily concerned the "validity" of Defendant's filed tariff, and that authority to determine the "validity" of Sprint's tariff rested solely with the FCC. *See id.* at 487–88. The court further

found that the plaintiffs' "fraud" claims also were barred as artful pleading, stating that "[i]t seems, then, that in this case 'fraud' is just another name for 'breach of contract,' so that to allow the plaintiff and her class to proceed ... would allow the original tariff to be enforced, and the amended tariff set aside ... which we just said is not allowed." *Id.*

■ By charging Plaintiffs the FUSF, Defendant has complied with its amended tariff F.C.C. No. 1, as section 203 of the Communications Act requires. Plaintiffs cannot subvert the FUSF "charge" by bringing claims against Defendant for damages or injunctive relief in this court. Whether Defendant's FUSF is a "reasonable" charge is a question left to the FCC's purview. *See United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Section 208 of the Communications Act permits Plaintiffs to challenge Defendant's FUSF in an FCC administrative proceeding, and authorizes the FCC to grant Plaintiffs appropriate relief. The "filed-rate" doctrine, however, bars Plaintiffs' suit in this court.[2]

While Plaintiffs do not seriously contest that, if applicable, the "filed-rate" doctrine bars their claims, Plaintiffs proffer a number of arguments why the filed-rate doctrine should not apply to their case. Relying first on *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir.1998) and *Gelb v. AT & T Co.*, 813 F.Supp. 1022 (S.D.N.Y.1993), Plaintiffs aver that the "filed-rate" doctrine is inapplicable here because affording

---

1. Plaintiffs contend that "it is absolutely clear that their common law breach of contract claim is properly determinable by this Court" because section 414 of the Communications Act, 47 U.S.C. § 414, "explicitly preserves all existing common law or statutory remedies in addition to the remedies afforded under the Communications Act." But the "filed-rate" doctrine precludes consideration of Plaintiffs' claims irrespective of their derivation because granting the relief Plaintiffs seek effectively would affect a "charge" other than the rate contained in Defendant's amended tariff F.C.C. No. 1. *See American Tel. & Tel.*, 118 S.Ct. at 1962.

2. Invoking the three factor test outlined in *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 172 (1st Cir.1989), of the so-called "primary jurisdiction" doctrine, Plaintiffs contend that Defendant fails to show "why, based on these factors, this Court should ... defer to the FCC's discretion and dismiss the Plaintiffs' claims for misrepresentation and breach by MCI of its 'no rate increase' guarantee." But it already is well established that a challenge to a "charge" contained in a tariff filed with the FCC must be brought in the first instance before the FCC if the relief sought would result in the carrier effectively charging the plaintiff a charge other than the filed rate. *See American Tel. & Tel.*, 118 S.Ct. at 1962.

Plaintiffs the relief they seek would not frustrate the policies underlying the doctrine. In *Marcus,* though, the Second circuit allowed the plaintiff to proceed on a claim for fraud seeking injunctive relief to require AT & T to disclose its "rounding-up" practice because the court found that, even if an injunction were imposed, the plaintiff still would be required to pay AT & T's filed rate. *Id.* at 62–63. In *Gelb,* the District court ruled similarly, finding that AT & T's advertising claims about its calling card could be enjoined if the claims were proven false because such a determination would not require consideration of the "reasonableness" of AT & T's tariffed rates or practices. *Id.* at 1031. Plaintiffs in this case conversely seek a partial refund of Defendant's FUSF· charge and prospective relief from that charge. As discussed, the "filed-rate" doctrine bars relief of this kind.[3]

Plaintiffs next contend that the court should not apply the "filed-rate" doctrine because of the so-called "no meaningful review" doctrine. Relying on *Brown v. Ticor,* 982 F.2d 386 (9th Cir.1992), Plaintiffs argue that, because the FCC does not review filed tariffs in advance of their becoming effective, the court should not employ the "filed-rate" doctrine to legitimize a rate allegedly arrived at by improper conduct. The *Brown* decision, however, did not concern federally tariffed rates; instead, it involved insurance rates filed with a private insurance bureau that the Ninth circuit concluded was not actively supervised by any state authority. *Id.* at 388. Plaintiffs fail to cite a single case in the Communications Act context applying the "no meaningful review" doctrine, nor do they offer any legitimate reasons why, after nearly a century of its application, the "filed-rate" doctrine should give way here to a borrowed principle of "no meaningful review."

Plaintiffs last argue that the "filed-rate" doctrine should not bar their claims because of a supposed "exception" to the doctrine called the "*Sierra–Mobile* doctrine"a doctrine derived from two Supreme Court cases, *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), and *Federal Power Comm'n v. Sierra Pacific Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). The *Sierra–Mobile* doctrine, though, is a standard of review employed by administrative agencies and courts reviewing agency decisions, and authorizes agencies like the FCC "to prescribe a change in contract rates when it finds them to be unlawful ... and to modify other provisions of private contracts when necessary to serve the public interest." *Western Union Telegraph Co. v. Federal Communications Commission,* 815 F.2d 1495, 1501 (D.C.Cir.1987). Whether Defendant's amended tariff F.C.C. No. 1 violates the *Sierra–Mobile* doctrine thus is an issue first for the FCC. Plaintiffs fail to cite a single case applying the doctrine as an exception to the filed-rate doctrine in an independent federal lawsuit.

### III.

For the foregoing reasons, the court concludes that the "filed-rate" doctrine precludes consideration of Plaintiffs' claims. Defendant's motion to dismiss is ALLOWED.

AN ORDER SHALL ISSUE.

### *ORDER*

Defendant's motion to dismiss is ALLOWED.

IT IS SO ORDERED.

---

**3.** Plaintiffs also seek an injunction requiring Defendant to discontinue its allegedly false characterization of its FUSF. Because they do not bring an independent claim for fraud, though, Plaintiffs ostensibly seek such relief derivatively in connection with their section 201(b) claim. The *Marcus–Gelb* framework accordingly is not implicated because consideration of the section 201(b) claim necessarily would require the court to consider the "reasonableness" of provisions of Defendant's tariff F.C.C. No. 1.