Priscilla HILL, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

BELLSOUTH
TELECOMMUNICATIONS, INC.,
Defendant.

No. CIV.A.1:02–CV–1334–C.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 28, 2003.

Paul A. Dominick, Nexsen Pruet Jacobs Pollard & Robinson, Charleston, SC, Clinton Whetstone Sitton, Martin & Jones, Atlanta, GA, for Plaintiff.

James Reynolds Thompson, Ashley B. Watson, Atlanta, GA, for Defendant.

### ORDER

PANNELL, District Judge.

This matter is now before the court on the plaintiff's motion to remand and the defendant's motion to dismiss.

### FACTUAL BACKGROUND

The plaintiff filed this action in the State Court of Fulton County, Georgia, on April 17, 2002, raising various state law claims regarding BellSouth Telecommunications Inc.'s ("BellSouth") billing practices. The plaintiff alleges that BellSouth charges its customers a "universal service charge," which it represents to be a recoupment of its contribution to the federal universal service fund but which actually exceeds BellSouth's required contribution to that fund. BellSouth removed the action to this court on May 17, 2002, pursuant to 28 U.S.C. §§ 1441 and 1446.

### LEGAL ANALYSIS

The court will first address the motion to remand in order to determine whether it has jurisdiction to hear this matter. Only if the court has subject matter jurisdiction does it have authority to consider the motion to dismiss.

### I. The plaintiff's motion to remand

#### A. The removal standard

The removal statute, 28 U.S.C. § 1441, provides, "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." BellSouth argues that this court has jurisdiction because the complaint raises a federal question.

 Under the federal-question jurisdiction statute, 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Whether a claim arises under federal law for purposes of the statute is generally determined by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Thus, a plaintiff may generally avoid federal jurisdiction by asserting claims based exclusively on state law. Because a defense does not appear on the face of a well-pleaded complaint, it cannot authorize removal to federal court. *Metro.*

*Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Moreover, a well-pleaded complaint presents a federal question only where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The exception to this rule is in instances where Congress has so completely preempted a particular area that any civil complaint in that group of claims is necessarily federal in character. *Metro. Life Ins. Co.,* 481 U.S. at 63–64, 107 S.Ct. at 1546.

## B. Application of the removal standard in the instant case

In the instant case, the plaintiff has raised six state law claims based on her allegation that BellSouth charges its consumers a "universal service charge" that is higher than its required contribution to the federal universal service fund, yet represents the charges as a recoupment of its contributions to that fund. These claims include violation of the Georgia Unfair Trade Practices Act, fraud and negligent misrepresentation, conversion, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of contract accompanied by a fraudulent act. The plaintiff seeks recovery of BellSouth's undisclosed charges in excess of its contributions to the fund.

BellSouth argues that the complaint presents a federal question because "at the heart of every claim" the plaintiff challenges the filed tariff rate for its federal universal service charge. BellSouth contends that all of the plaintiff's claims depend upon a finding that its filed tariff rate is excessive and, therefore, that they present a federal question based on the filed tariff doctrine.

## 1. Federal regulation of telecommunications carriers

BellSouth is a provider of telecommunications services and thus is subject to federal regulation as a common carrier under the Federal Communications Act, 47 U.S.C. §§ 151 *et seq.* That act requires telecommunications carriers to contribute to the preservation and advancement of universal service. *Id.* § 254(d). The purpose of this universal service fund ("USF") is to subsidize the cost of telecommunications services to schools, health care providers, libraries, and rural and low-income consumers. *Id.* § 254(b).

The Federal Communications Commission ("FCC") administers and implements the USF program. *Id.* § 254(a)(2), (d). Under FCC regulations, carriers must contribute a percentage of their revenues to the USF. 47 C.F.R. § 54.706; *Federal–State Joint Bd. on Universal Service,* Report and Order, 12 FCC Rcd. 8776 (¶¶ 842–44) (1997) ("Universal Service Order"). The percentage of revenues a carrier is required to contribute, known as the "Contribution Factor," is adjusted by the FCC on a quarterly basis to ensure sufficient funding for the program. 47 C.F.R. § 54.709.

The FCC authorizes carriers to recover the cost of their USF contributions through their telecommunications services rates or as a separate itemized charge. 47 C.F.R. § 69.158; *Federal–State Joint Bd. on Universal Service,* Twenty–First Order on Reconsid., 15 FCC Rcd. 12050 (¶ 11) (2000) ("Universal Service Order on Reconsid."); *Universal Service Order,* 12 FCC Rcd. at ¶¶ 851–53. The Communications Act also requires that a carrier's contribution recovery practices be just and reasonable. *Federal–State Joint Bd. on Universal Service,* Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd. 3752 (¶ 95) (2002) ("Universal

Service NPRM and Order"); *Truth–in–Billing and Billing Format*, First Report and Order and Further Notice of Proposed Rulemaking, 14 FCC Rcd. 7492 (¶¶ 24, 57–58) (1999). However, neither the act nor the regulations mandate the manner or amount in which carriers may recover these funds. *Universal Service Order on Reconsid.*, 15 FCC Rcd. at ¶ 11 ("[i]nstead of forcing carriers to recover their universal service contributions through a mandatory surcharge on their customers, the Commission gave carriers the flexibility to decide whether, how, and how much to recover from their customers"); *Universal Service Order*, 12 FCC Rcd. at ¶ 829 ("carriers will be permitted, but not required, to pass through their contributions to their interstate access and interexchange customers").

The Communications Act also requires common carriers to file with the FCC and make publicly available schedules, known as tariffs, setting forth all of their charges and the classifications, practices, and regulations affecting them. 47 U.S.C. § 203(a). The act makes it unlawful for a carrier to charge or receive a different compensation from that specified in the schedule or to "employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." *Id.* § 203(c).

### 2. The filed tariff doctrine

■■■ The filed tariff doctrine, also known as the filed rate doctrine, bars contract or tort claims that would vary the parties' rights as defined by a filed tariff. *AT & T Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 226–27, 118 S.Ct. 1956, 1964–65, 141 L.Ed.2d 222 (1998). In other words, a common carrier is required to adhere to its filed rates, irrespective of any rate it may have separately negotiated with a consumer. *In re Olympia Holding Corp.*, 88 F.3d 952, 956 (11th Cir.1996). " '[U]nless and until suspended or set aside, this filed rate

is made, for all purposes, the legal rate, as between carrier and [consumer].' " *Id.* (quoting *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183, (1922)). *See also Evanns v. AT & T Corp.*, 229 F.3d 837, 840 (9th Cir.2000) ("once a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be the law and to therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer") (citations omitted). The primary purpose of the doctrine is to prevent discrimination by foreclosing the possibility that carriers might maintain one rate on file, then secretly negotiate a lower rate with some customers. *In re Olympia*, 88 F.3d at 956.

■■■ Additionally, the filed tariff doctrine prevents a court from awarding relief that would have the effect of retroactively imposing a rate other than that provided in the filed tariff. *Taffet v. Southern Co.*, 967 F.2d 1483, 1491–92 (11th Cir.1992). The rationale for this restriction on the courts is that "[i]t would undermine the congressional scheme of uniform rate regulation to allow a ... court to award as damages a rate never filed with the Commission and thus never found to be reasonable within the meaning of the Act." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 579, 101 S.Ct. 2925, 2931, 69 L.Ed.2d 856 (1981) (concerning natural gas rates filed with the Federal Energy Regulatory Commission). Thus, the doctrine is designed to insulate from challenge the filed rate deemed reasonable by the regulatory agency. *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir.1994). "The agencies' experience and investigative capacity make them well-equipped to discern from an entity's submissions what costs are reasonable and in turn what rates are reasonable in light of these costs. If courts were licensed to enter this process

under the guise of ferreting out fraud in the rate-making process, they would unduly subvert the regulating agencies' authority and thereby undermine the stability of the system." *Id.*

■ The Supreme Court has recently affirmed that the filed tariff doctrine applies to the Communications Act. *Central Office*, 524 U.S. at 222, 118 S.Ct. at 1962. The Court also established that the doctrine applies to provisioning of services and billing, as well as to the rates themselves. *Id.* at 225, 118 S.Ct. at 1964. Bell-South argues that based on this doctrine, federal question jurisdiction exists in this case because the plaintiff's claims challenge its filed tariff. Essentially, Bell-South asserts that the plaintiff's claims implicate the charges and practices surrounding its tariff and, therefore, that they are governed by federal law whether or not they are completely preempted by the Communications Act. BellSouth further contends that because allowing the plaintiff to recover the relief she requests would effectively cause the court to charge a rate other than that in the filed tariff, her claims are barred by the filed tariff doctrine.

### 3. Application of the filed tariff doctrine in the instant case

The plaintiff's primary argument against application of the filed tariff doctrine in this case is premised on the mistaken belief that BellSouth is an interexchange long distance carrier and, therefore, is precluded from filing rates with the FCC following the detariffing that took effect in 2002. She asserts that after July 31, 2002, the FCC precludes long distance carriers from filing their rates and fees in tariffs

with the FCC. *See Common Carrier Bureau Extends Transition Period for Detariffing Consumer Domestic Long Distance Services, Public Notice*, DA 01–282 (C.C.B. Feb. 5, 2001); *Policy and Rules Concerning the Interstate, Interexchange Marketplace*, Second Report and Order, 11 FCC Rcd. 20730 (1996) ("Interstate, Interexchange Marketplace Order"). Thus, the filed tariff doctrine no longer applies, and customers may challenge carriers' charges in state court. *See, e.g., id.* at ¶¶ 38, 42, 55; *Frontline Communications Int'l, Inc. v. Sprint Communications Co.*, 178 F.Supp.2d 432, 438–39 (S.D.N.Y.2001).

However, BellSouth maintains that it is a local exchange carrier, rather than an interexchange long distance carrier.[1] As such, the filed tariff doctrine still applies, because detariffing affects only interexchange long distance carriers. *See, e.g., Universal Service NPRM and Order*, 17 FCC Rcd. at ¶ 93; *Interstate, Interexchange Marketplace Order*, 11 FCC Rcd. at ¶¶ 3–5, 14, 36, 70, 130–31.

The plaintiff's second argument, which does not rely on the effect of detariffing, has more merit. The plaintiff asserts that this action does not implicate federal law because it is based entirely on state law claims, which are not completely preempted by the Communications Act. The Eleventh Circuit has concluded that, based on the act's saving clause and other provisions, Congress did not intend state law causes of action within the scope of the act to be federalized. *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir.2001). The saving clause provides, "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at com-

---

1. BellSouth has indicated that its subsidiary, BellSouth Long Distance, Inc., was permitted to offer long distance service in Georgia beginning May 24, 2002. Thus, BellSouth maintains that (1) it is not a long distance provider and (2) BellSouth Long Distance, Inc., could not have been the plaintiff's long distance provider at the time she filed her complaint (April 17, 2002). The plaintiff has not responded to these assertions.

mon law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. Based on that provision, the Second Circuit has held that the act "not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law." *Marcus v. AT & T Co.,* 138 F.3d 46, 54 (2d Cir.1998). *See also In re Long Distance Telecomm. Litig.,* 831 F.2d 627, 633–34 (6th Cir.1987) (holding that the district court erred in concluding that plaintiff's state law claims for fraud and deceit were preempted).

However, the saving clause "preserves only those rights that are not inconsistent with the statutory filed-tariff requirements." *Central Office,* 524 U.S. at 227, 118 S.Ct. at 1965. Thus, the question in the instant case is whether the plaintiff's state law claims are consistent with the filed-tariff requirement. If the plaintiff's claims do not implicate the parties' rights as defined by a filed tariff, they fall within the saving clause of the Communications Act and, therefore, are not preempted.

██ The court concludes that some of the plaintiff's claims present a challenge to the parties' rights as defined by a filed tariff and thus are preempted by the Communications Act. Although the plaintiff's claims are based on provisions of state law, they challenge not only alleged misrepresentations by BellSouth regarding its billing practices but also BellSouth's alleged practice of collecting an amount in excess of its required contribution to the USF. As such, to the extent that these claims challenge BellSouth's practices for recovering USF contributions, they are preempted by the Communications Act based on the filed

tariff doctrine. *See In re Universal Service Fund,* 247 F.Supp.2d 1215, ——, 2002 WL 31929179, *1 (D.Kan. Dec. 19, 2002) (holding that claims premised on alleged misrepresentations regarding recoupment of USF contributions do not raise substantial questions of federal law and are not completely preempted, but that claims premised on the illegality of a carrier's practice of charging customers more than they are required to remit to the USF program raise substantial questions of federal law and are completely preempted). *See also Marcus,* 138 F.3d at 54–56 (holding that preemption doctrine did not support removal of claim that a carrier failed to disclose its practice of billing long distance service by rounding up to the next higher full minute, but that action could be removed based on plaintiff's breach of warranty claim because that claim necessarily arises from a filed tariff).

In the recent case of *In re Universal Service Fund,* a district court considered similar issues in a multidistrict litigation concerning individual and class action lawsuits filed throughout the country.[2] *Id.* The court concluded that (1) claims regarding alleged mischaracterization of the USF charge may be brought exclusively under state law so as to preclude removal, (2) claims alleging that USF charges are excessive, in which one theory of recovery rests exclusively on misrepresentation regarding the charges, may also be drafted so as to preclude removal, and (3) claims alleging that USF charges are unfair, excessive or otherwise unlawful, regardless of any alleged misrepresentation, are governed by the Communications Act and thus may be removed. *Id.* 247 F.Supp.2d at —— - ——, 2002 WL 31929179 at **7–10.

---

**2.** These actions were brought against AT & T and Sprint. Many of them were filed in state court and removed to federal court by the

carriers. *Id.* 247 F.Supp.2d at ——, 2002 WL 31929179 at *1.

The *In re Universal Service Fund* court found that those claims based solely on the propriety of the carriers' charges necessarily implicate federal law because recoupment of USF contributions is regulated by the Communications Act. *Id.* at 1327, 2002 WL 31929179 at *10. Although the act and FCC regulations do not currently mandate how carriers may recover these funds, the act does require that recovery practices be just and reasonable. *See, e.g., id.; Universal Service Order,* 12 FCC Rcd. at ¶¶ 829, 851–53; *Universal Service NPRM and Order,* 17 FCC Rcd. at ¶ 95. The court also pointed out that "the very issue raised by plaintiffs' complaints regarding the level of USF charges is currently before the FCC, which initiated rulemaking proceedings in February of [2002] to consider the issue under applicable federal law.... The FCC order states unequivocally that recovery of universal service contributions is governed by [the Communications Act]." *In re Universal Service Fund,* 247 F.Supp.2d ——, at ——, 2002 WL 31929179, at *10.

Finally, the court cited the reasons why allegations that a carrier's USF charges are excessive require reference to the statute: the percentages charged and collected by the carrier may vary from the contribution factor for various reasons, such as to account for administrative costs surrounding USF collections and contributions, to adjust the percentage in order to account for customers who do not pay their bills, or because revenues declined in the six-month lapse between receipt of revenues and the FCC's determination of the contribution factor. *Id.* Thus, in order to recover, a plaintiff "will necessarily have to prove that these explanations for the higher percentage charged are unreasonable or unjust under [the Communications Act]." *Id.* As a result, the claims raise substantial questions of federal law and, therefore,

are removable. *Id.* 247 F.Supp.2d ——, at —— – ——, 2002 WL 31929179 at *10–11.

Using the same logic as applied in *In re Universal Service Fund,* courts have consistently held that the filed tariff doctrine bars both federal and state claims that would affect the parties' rights and obligations pursuant to a filed tariff. *See Evanns,* 229 F.3d at 841 (holding that plaintiff's claim that carriers cannot collect a USF assessment unless they disclose that it is a pass-through charge was barred by the filed-tariff doctrine because it challenged collection of an assessment in compliance with filed tariffs and would add an additional obligation beyond those set out in the tariffs); *Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488–90 (7th Cir.1998) (holding that state law claims for breach of contract and fraud were preempted when the effect of the suit would be to throw out an amended tariff as violating the original filed tariff); *Kline and Co. v. MCI Commun. Corp.,* 98 F.Supp.2d 69, 71–73 (D.Mass.2000) (holding that filed tariff doctrine barred plaintiff's claims based on a carrier's alleged overcharging for the USF, misrepresenting the excessive character of its USF, and breaching a promise to customers to not raise rates, because granting the relief requested, i.e., a partial refund of the USF charge and prospective relief from that charge, would require the court to effectively enforce a charge other than that contained in the filed tariff).

Alternatively, claims which merely seek to enforce a party's rights as defined by a filed tariff, without implicating the tariff itself, have been allowed to proceed. *See Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1171–72 (9th Cir.2002) (holding that a claim that a carrier overcharged for service in violation of a tariff was not precluded by the filed-rate doctrine because the plaintiff merely sought to enforce the tariff, not to challenge or add to it); *In re Long Distance Telecommun. Litig.,* 831 F.2d at 633–34 (holding that the district court erred in concluding that state

law claims for fraud and deceit, based on a carrier's failure to notify customers that it charged for uncompleted calls, were preempted because the claims presented a challenge to the failure to inform customers about the practice rather than to the practice itself).

The court agrees with the reasoning of and the conclusions reached in these cases. Therefore, it concludes that any claims which contest the legality of Bell-South's recovery of USF contributions, independent of any allegations of misrepresentation, implicate substantial questions of federal law and thus are completely preempted by the Communications Act. Accordingly, the court finds that it has jurisdiction over those claims which require a finding that BellSouth's alleged practice of overcharging customers in the recovery of its USF contributions is unlawful.

For these reasons, the plaintiff's motion to remand for lack of jurisdiction is DENIED.

## II. BellSouth's motion to dismiss

Because the court has subject-matter jurisdiction over this case, it will now consider the motion to dismiss. BellSouth raises three arguments in support of this motion: (1) the claims are barred by the filed tariff doctrine; (2) under the doctrine of primary jurisdiction, the claims should first by heard by the FCC; and (3) the state law claims are preempted by federal law.

The court will consider only BellSouth's first argument, because it is controlling in this case. In the previous section, the court found that those state law claims which challenge the legality of BellSouth's alleged overcharging of USF contributions implicate the parties' rights pursuant to BellSouth's filed tariff and, therefore, are removable. For the same reason, these claims are also barred in this court by the

filed tariff doctrine, which holds that such claims cannot be brought in any court whether based on federal or state law. *See, e.g., Evanns,* 229 F.3d at 841 (holding that a claim challenging collection of a USF assessment, based on allegations that the carrier failed to disclose that the USF was a pass-through charge, was barred by the filed tariff doctrine); *Kline and Co. v. MCI Communications Corp.,* 98 F.Supp.2d at 71–73 (holding that claims challenging a carrier's alleged overassessment of and misrepresentations regarding the USF charge were barred by the filed tariff doctrine because the relief requested would require a modification to the filed tariff rate). *Compare In re Universal Service Fund,* 2002 WL 31929179, at *12–13 (holding that claims regarding alleged overassessment of the USF charge which related to the time period prior to detariffing were not completely preempted because those claims revolve around misrepresentation rather than the validity of the filed tariffs).

Therefore, BellSouth's motion to dismiss is GRANTED.

## III. Supplemental jurisdiction

■ Although the plaintiff's claims based on conversion, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of contract accompanied by a fraudulent act were federal in nature, those claims based on violation of the Georgia Unfair Trade Practices Act and on fraud and negligent misrepresentation are not.

The court may exercise supplemental jurisdiction over those claims which are based solely on state law based on 28 U.S.C. § 1367(a). That statute provides, "In any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy ...." However, the exercise of supplemental jurisdiction is at the discretion of the district court. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349–50, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). *See also* 28 U.S.C. § 1367(c)(3) (enumerating circumstances in which district courts may decline to exercise supplemental jurisdiction).

In this instance, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims, and those claims are hereby REMANDED to state court.

## CONCLUSION

For the foregoing reasons, the court hereby DENIES the plaintiff's motion to remand [Doc. No. 5–1], the court GRANTS the defendant's motion to dismiss [Doc. No. 7–1], and the plaintiff's causes of action for conversion, unjust enrichment, breach of the duty of good faith and fair dealing, and breach of contract accompanied by a fraudulent act are dismissed.

The court declines to exercise supplemental jurisdiction over the plaintiff's causes of action for violation of the Georgia Unfair Trade Practices Act and for fraud and negligent misrepresentation. Those claims are remanded.