[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 2, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-11056

_____

D. C. Docket No. 02-01334-CV-CAP-1

PRISCILLA HILL, on behalf
of herself and all others
similarly situated,

Plaintiff-Appellee,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 2, 2004)

Before EDMONDSON, Chief Judge, BIRCH and FARRIS[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal involves the interplay between the Federal Communications Act, 47 U.S.C. § 201 et seq. (2000), which requires telecommunications service providers to file tariffs with the Federal Communications Commission, and the federal "filed rate doctrine," which prohibits customers from directly challenging those filed tariffs in state or federal court. Plaintiff-appellee, Priscilla Hill ("Hill"), brought six state-law claims challenging defendant-appellant's, BellSouth Telecommunications, Inc. ("BellSouth"), alleged practice of misleading customers about the filed tariffs it charged to customers. The district court dismissed four of Hill's claims as barred by the filed rate doctrine on the ground that those claims directly challenged BellSouth's filed tariff. The specific question presented in this appeal is whether Hill's two remaining state-law claims also should have been dismissed under the filed rate doctrine—on the theory that they, too, directly attacked BellSouth's filed tariff. After review, we conclude that these two claims should have been similarly dismissed. Accordingly, we REVERSE the judgment of the district court.

## I. BACKGROUND

BellSouth, as a telecommunications services provider, is subject to federal regulation under the Federal Communications Act ("FCA"), 47 U.S.C. § 201 et seq. The FCA requires carriers such as BellSouth to file with the Federal

Communications Commission ("FCC"), and make publicly available, certain schedules, or "tariffs," explaining all of the charges, practices, and regulations affecting them. 47 U.S.C. § 203(a). The FCA also requires BellSouth and other telecommunications services providers to contribute a percentage of their revenues to a "Universal Service Fund" ("USF"), 47 U.S.C. § 254(d), which is designed to provide affordable telecommunications services to rural and low-income areas, id. § 254(b)(3). BellSouth's required contribution to the USF is listed in the tariffs BellSouth filed with the FCC. In re Fed.-State Joint Bd. on Universal Serv., FCC 97-157, 1997 WL 236383, at *9056, 9145 (May 8, 1997).

Under FCC regulations in place at the time Hill filed her First Amended Complaint, BellSouth was permitted to recoup its required USF contribution from its customers, either through the rates it charged or as a separate itemized charge.[1] In re Fed.-State Joint Bd. on Universal Serv., FCC 02-329, 2002 WL 31778732, at *24959 (Dec. 13, 2002). BellSouth chose to impose a separate itemized charge of $0.53 indicated on each customer's monthly bill as the "Federal Universal Service Charge" ("FUSC"). R1-2, Ex. A at 2. Like BellSouth's required contribution to the USF, the dollar amount of the FUSC levied on BellSouth customers was

---

[1]Effective 1 April 2003, however, the FCC decided that telecommunications service providers such as BellSouth may no longer recoup an amount in excess of their contributions to the USF from their customers. In re Fed.-State Joint Bd. on Universal Serv., FCC 02-329, 2002 WL 31778732, at *24978 (Dec. 13, 2002).

included and explained in the tariffs that BellSouth filed with the FCC. Id. at 2, unnumbered 9.

Hill filed a complaint in the State Court of Fulton County, Georgia, raising various state-law claims regarding BellSouth's recoupment, through the FUSC, of an amount in excess of its required contribution to the USF. She alleged six claims based on (1) the Georgia Unfair Trade Practices Act, O.C.G.A. § 10-1-390, et seq.; (2) fraud and negligent misrepresentation; (3) conversion; (4) unjust enrichment; (5) breach of duty of good faith and fair dealing; and (6) breach of contract accompanied by a fraudulent act. As for damages, the district court construed Hill's complaint as requesting purely monetary relief—namely, "recovery of BellSouth's undisclosed charges in excess of its contributions to the fund." Hill v. BellSouth Telecomms., Inc., 244 F.Supp.2d 1323, 1325 (N.D. Ga. 2003).

BellSouth removed the action to the District Court for the Northern District of Georgia pursuant to 28 U.S.C. §§ 1441 and 1446, on the ground that Hill's state-law causes of action raised federal questions because they either (1) were completely preempted by the FCA or (2) raised substantial questions of federal law. Based on its assertion that federal jurisdiction existed, BellSouth also filed a motion to dismiss Hill's claims as barred under the federal filed rate doctrine. Hill,

4

on the other hand, filed a motion to remand the case to its state court of origin on the ground that none of her claims gave rise to federal subject matter jurisdiction.

The district court agreed with BellSouth that Hill's claims based on conversion, unjust enrichment, breach of duty of good faith and fair dealing, and breach of contract accompanied by a fraudulent act gave rise to federal question jurisdiction because they were completely preempted by the FCA. After finding federal jurisdiction for these claims (and, thereby, impliedly denying Hill's motion to remand these four claims), the district court granted BellSouth's motion to dismiss them pursuant to the filed rate doctrine. Hill, 244 F.Supp.2d at 1330. Hill did not appeal the dismissal of these four claims.

The district court disagreed, however, that Hill's two remaining claims—violation of the Georgia Unfair Trade Practices Act and fraud and negligent misrepresentation[2]—also gave rise to federal question jurisdiction because it concluded that these two claims were not completely preempted by the FCA. Id. The district court then declined to exercise supplemental jurisdiction over these claims and, therefore, granted Hill's motion to remand them to their state court of origin (thereby impliedly denying BellSouth's motion to dismiss these

---

[2]These two remaining claims contesting BellSouth's FUSF charge essentially challenge BellSouth's (1) characterization of the FUSF as a federal fee and (2) lack of full disclosure that customers are charged an amount in excess of BellSouth's required contribution to the USF. Appellee's Br. at 19.

5

claims). Id. at 1330-31. BellSouth now appeals the district court's implied denial of its motion to dismiss these two claims.

## II. ANALYSIS

Before we may proceed to the merits, we must first address whether we have appropriate jurisdiction to hear the appeal. We conclude (a) that we have appropriate appellate jurisdiction and (b) that BellSouth's motion to dismiss Hill's remaining two state-law claims should have been granted.

A. Appellate Jurisdiction

Hill argues that our jurisdiction to consider BellSouth's appeal was limited for two reasons. First, she contends that "[s]ince BellSouth's Notice of Appeal did not expressly address the order of remand, only that portion of the order denying their motion to dismiss the remanded claims is before this court." Appellee's Br. at 8. Second, she argues that, under Federal Rule of Civil Procedure 54(b), the district court's order was not a final decision under 28 U.S.C. § 1291 because it did not dispose of all the claims in Hill's multi-count action. We address each of Hill's misplaced concerns in turn.

1. BellSouth's Notice of Appeal

BellSouth's Notice of Appeal states its intention to appeal "from the portion of the [District] Court's order . . . denying Defendant's Motion to Dismiss Plaintiff's

claims for violation of the Georgia Unfair Trade Practices Act and for fraud and negligent misrepresentation in their entirety." R1-14 at 1. While it is true that "[t]he general rule in this circuit is that an appellate court has jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal," Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1528 (11th Cir. 1987), this circuit also embraces "a policy of liberal construction of notices of appeal" when (1) unnoticed claims or issues are inextricably intertwined with noticed ones and (2) the adverse party is not prejudiced, C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1056 (5th Cir. 1981).[3]

In this case, the district court's implied denial of BellSouth's motion to dismiss Hill's two remaining claims and its grant of Hill's motion to remand those claims are inextricably intertwined: the district court impliedly denied BellSouth's motion to dismiss Hill's state-law claims because it expressly granted Hill's motion to remand those claims. Since these issues are so interrelated, Hill is not prejudiced by our consideration of the district court's grant of her motion to remand because the propriety of the district court's decision to remand and its

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

implied decision to deny BellSouth's motion to dismiss require consideration of the same legal issue: whether federal question jurisdiction should have attached to Hill's two remaining claims.

2. The finality of the district court's order

Under Rule 54(b) of the Federal Rules of Civil Procedure, "in actions involving multiple claims for relief . . . an order that finally disposes of one or more but fewer than all of the claims for relief asserted . . . does not terminate the action in the district court" and is not appealable as a final order pursuant to 28 U.S.C. § 1291. Huckeby v. Frozen Food Express, 555 F.2d 542, 545 (5th Cir. 1977). Although the district court allowed two of Hill's claims to proceed in state court, these two claims were "terminate[d]" for purposes of further action by the district court, thereby making the district court's order one that is final and appealable in this court. Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350-51 (11th Cir. 1998) (concluding that the decision of a district court to remand state-law claims based on a denial of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is appealable).

B. The Merits of BellSouth's Appeal

Because we have jurisdiction to hear BellSouth's appeal, we now turn to a discussion of the merits of its appeal. In this discussion, we will (1) state the

8

proper standard of review, (2) discuss federal question jurisdiction and BellSouth's argument for why it should have attached to Hill's two remaining state-law claims, and (3) discuss the filed rate doctrine and why we agree with BellSouth that this doctrine bars Hill's requested relief in this case.

1. Standard of Review

The district court impliedly denied BellSouth's motion to dismiss Hill's two remaining state-law claims and declined to exercise supplemental jurisdiction over them based on its determination that those two claims did not give rise to federal subject matter jurisdiction. "[T]he subject matter jurisdiction of the district court is a legal question that we review de novo." Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1285 (11th Cir. 2001) (citation omitted). While usually "[w]e review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion. . . . , [t]o the extent that the court's decision was based on conclusions of law, we review the legal conclusions de novo." Engelhardt, 139 F.3d at 1351 n.4.

2. Federal Subject Matter Jurisdiction

Any claim that was originally filed in state court may be removed by a defendant to federal court if the case could have been filed in federal court originally. 28 U.S.C. § 1441(a). Where, as here, there is no diversity of citizenship, the defendant must show that federal question jurisdiction is present.

Id. § 1441(b). Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim "arises under" a federal law "is generally determined by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Smith v. GTE Corp., 236 F.3d 1291, 1310 (11th Cir. 2001) (citation omitted). Thus, "the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998). However, if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," federal question jurisdiction may nevertheless attach to the state-law claim. Smith, 236 F.3d at 1310.

BellSouth has argued, both before the district court and on appeal, that Hill's remaining two claims—based on the Georgia Unfair Trade Practices Act and fraud and negligent misrepresentation—should create federal question jurisdiction because they raise substantial questions of federal law. Specifically, BellSouth argues that resolution of these two claims implicates the filed rate doctrine, a judge-made creation of federal law. The district court did not consider this

10

argument, and BellSouth now urges us to do so on appeal.  Accordingly, we now consider the filed rate doctrine.

3.  The Filed Rate Doctrine

We conclude that federal question jurisdiction should have attached to Hill's two remaining state-law causes of action because they implicated the filed rate doctrine.  Although our decision is not compelled by binding, on-point precedent, we reach our conclusion based on a consideration of persuasive authority and the two broader principles underlying the doctrine:  nondiscrimination and nonjusticiability.  We begin with a general discussion of the filed rate doctrine, then discuss related cases from two sister circuits, and conclude by discussing the two principles underlying the doctrine and how they are implicated by Hill's two remaining claims.

a.  The Doctrine Generally

The filed rate doctrine (also known as the "filed tariff doctrine") "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." <u>Arkansas Louisiana Gas Co. v. Hall</u>, 453 U.S. 571, 577, 101 S. Ct. 2925, 2930 (1981).  As it applies in the telecommunications industry, the filed rate doctrine dictates that the rates a carrier

charges its customers, once filed with and approved by the FCC, become "the law" and exclusively govern the rights and liabilities of the carrier to the customer:

> Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff.

Evanns v. AT&T Corp., 229 F.3d 837, 840 (9th Cir. 2000) (internal footnotes omitted).

Therefore, causes of action in which the plaintiff attempts to challenge the terms of a filed tariff are barred by the filed rate doctrine. See, e.g., id. at 840; Marcus, 138 F.3d at 58-59. A more difficult question is presented, however, when the plaintiff's claims—at least on their face—do not attempt to challenge a filed rate and thus do not appear to implicate the parties' rights and liabilities under that rate. Hill, for example, argues that her remaining claims do not directly challenge BellSouth's filed FUSF, but instead challenge BellSouth's *representation* of the FUSF to its customers. We begin by examining related precedents from two other circuits.

### b. Related Cases

Two of our sister circuits have considered the effect of the filed rate doctrine on claims similar to Hill's, and both found the claims to be barred under the

doctrine. In <u>Marcus</u>, appellants, in claims similar to Hill's, alleged that AT&T's advertising and billing practices were false and misleading because the carrier did not disclose its practice of "rounding-up" the length of customer's long-distance calls to the next full minute. 138 F.3d at 51. The Second Circuit, however, held that fraud or misrepresentation claims are barred by the filed rate doctrine because, when monetary damages are requested, such claims have the effect of challenging the filed rate. <u>Id.</u> at 60-63.

The Ninth Circuit in <u>Evanns</u> faced similar claims to those presented in <u>Marcus</u> and those presented by Hill in this appeal. 229 F.3d at 840-41. Evanns challenged AT&T's collection of its USF pass-through fee as unlawful on the two grounds that (1) AT&T should have disclosed to its customers that the USF is, in fact, a pass-through charge and (2) the USF pass-through is not a charge required by the government to be paid by consumers. <u>Id.</u> Because AT&T had filed its USF tariff with the FCC, the Ninth Circuit concluded that any claim that AT&T had an obligation to Evanns "*beyond those* set out in the filed tariffs, i.e., that [AT&T] had a duty to *disclose* the fact that the USF assessment was a pass-through charge, is . . . barred by the filed-rate doctrine." <u>Id.</u> (emphasis in original). "The filed rate doctrine bars any claim, whether couched in terms of federal *or* state law, attacking

the defendants' collection of the USF assessment in compliance with the terms of the filed tariffs." Id. (emphasis in original).

### c. The Two Principles Underlying the Doctrine

Both the Marcus and Evans courts relied on the two principles underlying the filed rate doctrine: (1) nondiscrimination—"preventing carriers from engaging in price discrimination as between ratepayers" and (2) nonjusticiability—"preserving the exclusive role of federal agencies in approving rates for telecommunications services that are 'reasonable' by keeping courts out of the rate-making process . . ., a function that the federal regulatory agencies are more competent to perform." Marcus, 138 F.3d at 58. Based on these two principles, "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." Id. at 59. We address each principle and its effect on Hill's claims in turn.

### 1. Nondiscrimination

The purpose of the nondiscrimination principle underlying the filed rate doctrine is to ensure that all telecommunications customers are charged the same rate for their service—the rate filed with and approved by the FCC. The filed rate

doctrine prevents carriers from negotiating a lower rate with some customers and then charging others the rate filed with the FCC. AT&T Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 223, 118 S. Ct. 1956, 1963 (1998). The nondiscrimination principle explains why the filed rate doctrine bars any challenge that, "if successful, would have the effect of changing the filed tariff." Brown v. MCI Worldcom Network Servs., Inc., 277 F.3d 1166, 1170 (9th Cir. 2002). Even if such a challenge does not, in theory, attack the filed rate, an award of damages to the customer-plaintiff would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers. See, e.g., Marcus, 138 F.3d at 60 ("Plaintiffs who were able to prove their claims and recover damages would effectively receive a discounted rate for phone service over other AT&T customers.").

In this case, Hill's two remaining state-law causes of action implicate the nondiscrimination principle because, in effect, she "seeks recovery of BellSouth's undisclosed charges in excess of its contributions to the [USF]." Hill, 244 F.Supp.2d at 1325. Such compensatory damages "would have the effect of retroactively reducing" Hill's rate for telecommunications service, and BellSouth "would, in essence, be forced to refund to [Hill] the amount allegedly overcharged." Taffet v. Southern Co., 967 F.2d 1483, 1491 (11th Cir. 1992) (en

15

banc).  Like all other BellSouth customers, Hill is presumed to have notice, via BellSouth's filed tariffs, of the basis for BellSouth's FUSC.  Evanns, 229 F.3d at 841.  And to permit her to recover on her claims that BellSouth had an obligation to disclose to its customers—*beyond* the disclosures already made in its filed tariffs—that the FUSC BellSouth levied recouped an amount in excess of its required contribution to the USF would be to allow her "to receive a discounted rate for phone service over other [BellSouth] customers."  See, e.g., Marcus, 138 F.3d at 60; Evanns, 229 F.3d at 841.

2.  Nonjusticiability

The purpose of the nonjusticiability principle underlying the filed rate doctrine is to preserve the FCC's primary jurisdiction over determinations regarding the reasonableness of rates charged by regulated carriers.  Arkansas Louisiana Gas, 453 U.S. at 577-78, 101 S. Ct. at 2930.  This principle "prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority."  Marcus, 138 F.3d at 61.  Thus, even if a claim does not directly attack the filed rate, an award of damages to the customer that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine.

In this case, Hill's two remaining state-law causes of action implicate the nonjusticiability principle because she seeks only monetary damages as relief. Hill, 244 F.Supp.2d at 1325. Were we to award Hill the relief she seeks, we would be retroactively determining that the FUSC originally levied by BellSouth, that was filed with and approved by the FCC, was unreasonable. The fact that Hill challenges BellSouth's representation of the FUSC––rather than the FUSC itself––does not alter our analysis: "[a] regulated entity's alleged fraud does not create a right to a reasonable rate that exists independently of agency action." Taffet, 967 F.2d at 1494-95. Thus, Hill's remaining two claims are also barred by the nonjusticiability principle underlying the filed rate doctrine.

We therefore hold that Hill's two remaining claims implicate the filed rate doctrine because she seeks purely monetary damages as relief. Thus, these two claims raise substantial questions of federal law, and federal question jurisdiction should have attached. For that reason, the district court erred when it denied BellSouth's motion to dismiss these claims and instead remanded them to their state court of origin.

## III. CONCLUSION

Because we find that the district court erred by refusing to allow federal question jurisdiction for Hill's two remaining state-law causes of action, we

17

REVERSE the judgment of the district court denying BellSouth's motion to dismiss these two claims. Accordingly, we REMAND this case with instructions to grant BellSouth's motion to dismiss these claims as barred under the filed rate doctrine.

EDMONDSON, Chief Judge, dissenting:

I would affirm the district court's decision to remand to state court the remaining claims. I think today's court extends the judge-made filed-rate doctrine too far:  Congress intended not to remove from the states the power to prevent deceptive trade practices along the lines alleged by Hill in her claims for violation of the Georgia Unfair Trade Practices Act and for fraud and negligent misrepresentation.  Cf. AT&T v. Cent. Office Tel., Inc., 118 S.Ct. 1956, 1966-67 (1998) (Rehnquist, C. J. concurring) (stating, "The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff.  It does not serve as a shield against all actions based in state law.").