[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12686

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00445-CV-4-SPM-WCS

RODGER PFEIL,
CAROL PFEIL,

Plaintiffs-Appellants,

versus

SPRINT NEXTEL CORPORATION,

Defendant,

EMBARQ FLORIDA, INC., d/b/a Sprint Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 27, 2008)**

Before EDMONDSON, BLACK and FARRIS,[*] Circuit Judges.

PER CURIAM:

Rodger and Carol Pfeil brought a putative class action against Embarq, arguing that it misrepresented the price of its Vacation Rate Service by charging customers an interstate access surcharge. The district court dismissed the complaint under the filed rate doctrine, which prohibits customers from challenging filed tariffs in state or federal court. We affirm.

**I**

Sprint Nextel Corporation provides local telephone service to individual customers and businesses in Florida through Embarq Florida, Inc. d/b/a Sprint Florida. Embarq offers a product called Vacation Rate Service, which allows customers with local telephone service in Florida to place their accounts in a dormant status without terminating their phone service or losing their phone number. While subscribing to Vacation Rate Service, calls may not be placed to or from the subscriber's location. However, "[a]t the request of the subscriber, inward calls to a station at which service is suspended may be referred to the call

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

2

number of another station in the same or a distant exchange." General Exchange Tariff, Sec. A2, First Revised Sheet 27, ¶ C.14.a.3.

This litigation arose because Embarq charges its Vacation Rate Service subscribers a monthly interstate access surcharge, alternatively known as the "End User Common Line" and the "Subscriber Line Charge." On August 25, 2006, Rodger and Carol Pfeil filed a class action complaint against Sprint and Embarq in Florida state court, arguing (1) that Embarq did not disclose that Vacation Rate Service subscribers would be assessed the $6.50 interstate access surcharge and (2) that the surcharge was not disclosed in its Federal or State tariffs. The Pfeils asserted claims including breach of contract, fraud, and violation of the Florida Deceptive and Unfair Trade Practices Act. Embarq removed the action to the United States District Court for the Northern District of Florida, and the Pfeils filed an amended complaint in federal court stating the same claims as their original complaint.

Embarq moved to dismiss, arguing that the Pfeils' claims for monetary and equitable relief were barred under the filed rate doctrine. The district court granted Embarq's motion and the Pfeils timely appealed.

**II**

The district court's dismissal of a complaint under Rule 12(b)(6) is reviewed de novo. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1187 (11th Cir. 2002).

### III

"[T]he filed rate doctrine dictates that the rates a carrier charges its customers, once filed with and approved by the FCC, become 'the law' and exclusively govern the rights and liabilities of the carrier to the customer." *Hill v. Bellsouth Telecomm., Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004). Under the doctrine, carriers are forbidden from charging rates other than those set out in the tariff, and "customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff." *Id.* The doctrine applies to tariffs that are filed with state or federal agencies. *Taffet v. Southern Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992).

There is no dispute that the Pfeils' claims for damages would be barred if the state or the federal tariff authorized the application of the interstate access surcharge to vacation service. The Pfeils, however, argue that the terms of the tariffs do not authorize the application of the surcharge to vacation service. We reject the argument.

4

The district court based its holding that the filed rate doctrine precluded recovery solely on language in the state tariff.  The Pfeils argue, in response, that the state tariff expressly prevents the interstate access surcharge from being applied to vacation service.  Neither position is tenable.

The state tariff states that:

> The monthly charge for residence and business access lien services will be billed at the following % of the tariff rate, excluding taxes and surcharges e.g. [Subscriber Line Charge], 911 and USF.
> a) Residence/Business Access Line only[:]  50%.

General Exchange Tariff, Section A2, First Revised Sheet 28 ¶ C.14.b.1.  The Pfeils argue that the use of the word "excluding" indicates that the Subscriber Line Charge is excluded from the vacation service recipient's bill.  This reading is contrary to the plain language of the provision.  As the district court correctly concluded, this provision does not mean that all taxes and surcharges are excluded from the vacation rate.  Rather, it means that the vacation rate is calculated by halving the base monthly charge.  Appropriate taxes and surcharges are then added to that half.

The district court erred, however, in assuming that the interstate access surcharge should be added back to the vacation rate.  The provision does not

indicate *which* taxes and surcharges to add back. To answer this question, we must look to the federal tariff.

B

The federal tariff authorizes Embarq to charge a monthly $6.50 interstate access surcharge on "[e]nd users who obtain local exchange service from the Telephone Company under its general and/or local exchange tariffs." Tariff F.C.C. No. 1, ¶4, 4.7. Embarq's General Exchange Tariff for the State of Florida defines "local exchange service" as "[t]he general telephone service, provided under a specified schedule of rates, which allows a subscriber to originate and receive calls from his/her telephone line through facilities provided for local intercommunication to other telephone lines within a specified area without payment of toll charges." General Exchange Tariff, Sec. A1, Second Revised Sheet 19. Though the language used is not precise, Vacation Rate Service constitutes "local exchange service" under the tariffs. Vacation Rate Service reserves the local facilities for subscribers; reserves for subscribers the right to, at a future date, use their phone number to originate and receive calls; and enables subscribers to have calls placed to their line "referred" to them at another number.

This result is consistent with the purpose of the surcharge. The interstate access surcharge was established by the FCC to recover the cost of maintaining

6

the "local loop," the physical infrastructure that connects an end user to the telephone carrier's network. *See In the Matter of Access Charge Reform*, 15 F.C.C.R. 12962, 12970 (F.C.C. 2000). Vacation Rate Service subscribers are paying for the carrier to reserve their line, and it is consistent with the purpose of the tariff for subscribers to pay to maintain the local loop. *See Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 220 (5th Cir. 1979) ("[A]n interpretation that is reasonable and consistent with the purpose of the tariff is preferred.").[1]

## IV

The Pfeils also argue that the district court erred by dismissing their requests for injunctive and declaratory relief. We reject this argument. All but one of the Pfeils' requests for equitable relief would effectively excuse them from paying the interstate access surcharge. This result is forbidden by the filed rate doctrine. *Hill*, 364 F.3d at 1315.

The Pfeils' remaining request, that Embarq be required to include the interstate access surcharge in their advertised price pursuant to the Florida Deceptive and Unfair Trade Practices Act, is also barred. To establish a violation

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), we adopted as binding precedents all decisions of the former Fifth Circuit issued before October 1, 1981.

7

of the FDUTPA, the plaintiff must show that "the practice was likely to deceive a consumer acting reasonably in the same circumstances." *State v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. App. 2004). Under the filed rate doctrine, "customers are . . . charged with notice of the terms and rates set out in that filed tariff . . . ." *Hill*, 364 F.3d at 1315. A reasonable consumer would be charged with knowledge of the filed tariff. The Pfeils cannot demonstrate a FDUTPA violation. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2d Cir. 1998).

**AFFIRMED.**